UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

NOV 1 4 2002

Michael N. Milby
Clerk of Court

| | |
|---|---|
| MARIO TUNCHEZ, | ) |
| | ) |
|     Applicant | ) |
| | ) |
| vs. | )   Civil No. B-02-CV-98 |
| | )   (CR B-98-158-02) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
|     Respondent | ) |

APPLICANT'S OBJECTIONS TO
MAGISTRATE JUDGE'S (SECOND) REPORT AND RECOMMENDATION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the Applicant, Mario Tunchez, represented by counsel, and hereby files substantive objections to the Magistrate Judge's (second) Report and Recommendation (Docket Doc. No. 9; Oct. 17, 2002); and hereby states to this Honorable Court as follows:

I.

THE MAGISTRATE'S CONSTRUING THE SINGLE PAGE NOTICE
OF APPEAL FILED BY COUNSEL AS AN APPLICATION FOR
CERTIFICATE OF APPEALABILITY ("COA") IS ERRONEOUS.

The applicant incorporates herein the arguments set forth in his motion to strike filed on November 12, 2002. Such motion sets forth objections to the procedural aspects of the magistrate treating the Notice of Appeal (Docket Doc. No. 7; Aug. 30, 2002) as an application for COA based on *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). The objections set forth herein   are substantive.

II.

AEDPA'S REQUIREMENT THAT THE EXERCISE OF FEDERAL APPELLATE JURISDICTION BE CONDITIONED ON THE SUBSTANTIAL SHOWING OF THE VIOLATION OF A FEDERAL PRISONER'S CONSTITUTIONAL RIGHTS VIOLATES THE SEPARATION OF POWERS ("SOP") DOCTRINE.

A.

Only Congress has power to establish the scope of the exercise of federal appellate jurisdiction. *See* U.S. Const., Art. III, §§ 1[1] Title I of AEDPA[2], however, violates SOP by shifting to the federal courts the power to determine whether or not they will exercise their jurisdiction. Specifically, this shift is accomplished by AEDPA's assigning to the courts power to exercise appellate jurisdiction *vel non* with respect to the denial of a federal prisoner's § 2255 motion, depending on a substantial showing of the violation of a constitutional right. *See* 28 U.S.C. § 2253(c)(1)(B) & 2253(c)(2). This conditional exercise of appellate authority that is wholly dependent upon a determination by the courts, themselves, is a subtle but sure surpassing of the limits separating legislative from judicial power. *See United States v. Klein*, 80 U.S. (13 Wall.) 128, 147 (1871).

---

[1] The first sentence of the U.S. Const., Article III, § 1 reads as follows:

> The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior courts as the Congress may from time to time ordain and establish.

[2] The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, 110 Stat. 1217; Title I is codified at 28 U.S.C. §§ 2241-2155. AEDPA's undisputed purpose is to promote "the principles of comity, finality and federalism." *Williams v. Taylor*, 529 U. S. 420, 436 (2000). Such principles save finality are only of concern as a matter of federalism in reviewing a state conviction, which are not at issue here.

A.

*Klein, supra*, is a rare gem of a case. It arose on the claim for the proceeds from 664 bales of cotton. The bales had been seized and sold by U.S. Treasury agents. The amount at stake was the then-princely sum of little more than one-eighth of one million dollars ($125,300.00). After the owner of the bales died, the administrator of his estate, Mr. Klein, pursued the claim against the United States. He brought suit in the court of claims. The court of claims rendered judgment for Klein.

In supplemental findings made after the judgment it was shown by the government that during the Civil War the owner of the bales had signed as surety two official bonds of military officers in the Confederate Army (one bond for a brigade quartermaster and the other bond for an assistant commissary). Thereafter, the owner of the bales had taken an amnesty oath and had been pardoned by President Lincoln. The pardon was "dated December 8, 1863, [which] relieved him from any charge of disloyalty on account of his having become security as aforesaid." *Klein*, 80 U.S. at ___ , 20 S.Ct. at 520.

The government made a motion to dismiss Klein's claim for the proceeds of the cotton bales. The government based its motion on the applicable statute that set forth two substantive rules: first, it made a pardon prima facie evidence that a person had participated in the Rebellion

(assisted the Confederacy); secondly, it divested the courts (either the court of claims or the appellate court, in this case the U.S. Supreme Court) of jurisdiction. *Klein*, 80 U.S. at 145-6, 20 S.Ct. at 525. Among other arguments Klein suggested that the applicable statute violated SOP.

The Supreme Court agreed with Klein that the statute violated SOP in the following passage:

> The court has jurisdiction of the cause to a given point; but when it ascertains that a certain state of things exists, its jurisdiction is to cease and it is required to dismiss the cause for want of jurisdiction.
>
> It seems to us that this is not an exercise of the acknowledged power of Congress to make exceptions and prescribe regulations to the appellate power.

*Klein*, 80 U.S. at 146, 20 S.Ct. at 525.

B.

Further supporting the conclusion that Title I of AEDPA as applied to federal prisoners violates SOP is found in its exempting the government from applying for a COA. *See* 28 U.S.C. § 2253(c)(2) (providing that a COA is only required by a prisoner and not by the government).[3] The analysis of the Court in *Klein* is again relevant, as follows:

> Congress has already provided that the Supreme Court shall have jurisdiction of the judgments of the court of claims on appeal. Can it prescribe a rule in conformity with which the court must deny to itself the jurisdiction thus conferred, because and only because its decision, in accordance with settle law, must be adverse to the government and

---

[3] F. R. App. P. 22(b)(3) was revised to conform with Title I of AEDPA. In its entirety it reads as follows: "A certificate of appealability is not required when a state or its representative or the United States or its representatives appeals."

favorable to the suitor?  This question seems to us to answer itself.

*Klein*, 80 U.S. at 147, 20 S.Ct. at 526.

Thus, the precedent of *Klein* clearly supports the conclusion that Congress violated SOP by assigning in Title I of AEDPA power to exercise appellate jurisdiction *vel non* with respect to the denial of a federal prisoner's § 2255 motion, depending on a substantial showing of the violation of a constitutional right.  See *Klein, infra*.

C.

Several facts are clear: first, before 1996 the pre-AEDPA statute required no certificate of probable cause for federal prisoners.  One of the reasons is found in a series of Supreme Court decisions that protect the right of plenary appellate review against SOP violation.  *E.g., INS v. Chadha*, 462 U.S. 919 (1983) (Congressional veto of deportation violates separation of powers).  Admittedly, where Congress acts within its Article I power, Supreme Court review permits statutory limitations on appellate review.  *E.g., Board v. MCorp Financial, Inc.*, 502 U.S. 32 (1991) (upholding provision of Congress' Financial Institutions Supervisory Act that bars judicial review pending administrative action). However, where Congress power rests on the "cases and controversies" language of Article III --- its authority for AEDPA --- SOP clearly restrains Congressional shifting of its power to the federal courts to determine whether or not they will exercise their jurisdiction.  See *Klein, supra; INS, supra; see also MCorp Financial, Inc.*

Moreover, with an eye open to SOP concerns the Supreme Court prefers to protect plenary appellate review against Congressional intrusion. *E.g. Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986) (preferring to avoid the "serious constitutional question" by interpreting statute's language to permit individuals to challenge a payment regulation's validity even though the statute barred judicial review of individual claims for payment under the regulation). Specifically, for example, in *Oestereich v. Selective Service*, 393 U.S. 233 (1968) the Supreme Court permitted judicial review of a 1-A classification even though the Congress' statute expressly and specifically forbade preinduction judicial review); *accord Breen v. Selective Service*, 396 U.S. 460 (1970).[4]

In sum, solely with respect to the appeal of the denial of a federal prisoner's § 2255 motion and drawing a distinction for appeals by the government, 28 U.S.C. § 2253(c)(1)(B) and § 2253(c)(2) impermissibly shift Article III Congressional power for establishing appellate jurisdiction to the courts (depending on whether or not the courts, themselves, determine that a substantial showing of the violation of a constitutional right is shown) that, like the statutes at issue in *Klein* and *INS*, violates SOP.

---

[4] *See also Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989) (Congress lacks the power to strip parties who are contesting matters of private right of their constitutional right to a jury trial); *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995) (Congress may not exercise the judicial power to revise final judgments); *J. W. Hampton, Jr., & Co.*

III.

THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ERRONEOUSLY CONCLUDES THAT NO CONSTITUTIONAL RIGHT WAS DENIED.

The Magistrate Judge's (second) Report and Recommendation (Docket Doc. No. 9; Oct. 17, 2002) represents that the applicant "makes no valid claims that detail a denial of a constitutional right." Magistrate Judge's (second) Report and Recommendation (Docket Doc. No. 9; Oct. 17, 2002), slip op., p. 5. While it is true that the notice of appeal construed as an application for COA set forth no constitutional claims, the Application for COA filed on November 6, 2002 (Docket Doc. No. 10) solely that jury bias in violation of both Due Process and 6th Amendment rights were at issue. The Application for COA stated as follows:

> Thus, the issue for factual resolution as presented in the § 2255 motion was jury bias (actual and implied); namely, whether the trial mechanics undercut the jury's presumption of the applicant's innocence, thereby lowering the standard of proof necessary for the government to convict. *Cool v. United States*, 409 U.S. 100, 105 (1972).

Application for COA filed on November 6, 2002 (Docket Doc. No. 10), ¶ 22.

It was the failure of the district court to order discovery in order to permit the applicant an opportunity to show that the unconstitutional dynamic of jury bias motivated the verdict that is now at issue. This is clearly a constitutional issue and was clearly set forth in the

---

*v. United States*, 276 U.S. 394, 406 (1928) (Congress may not "invest itself or its members with either executive power or judicial power").

applicant's Application for COA filed on November 6, 2002 (Docket Doc. No. 10).

As presented in the Application for COA filed on November 6, 2002 (Docket Doc. No. 10), the Application identified the following error:

> To test the fundamental, constitutional issue of factual jury bias, a short, succinct jury questionnaire designed within the parameters of Fed. R. Evid. 606(b) was drafted. It was attached to the original petitioner filed pursuant to 28 U.S.C. § 2255. The court should have treated and considered the single-page jury questionnaire as a request for discovery under Rule 6 of the District Court Rules Governing Section 2255 Cases.

Application for COA filed on November 6, 2002 (Docket Doc. No. 10), ¶ 23.

IV.

**THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ERRONEOUSLY CONCLUDES THAT THE ISSUES ARE NOT DEBATABLE AMONG REASONABLE JURISTS.**

The Magistrate Judge's (second) Report and Recommendation (Docket Doc. No. 9; Oct. 17, 2002) represents that the applicant "can not show that the issues are debatable amongst reasonable jurists." Magistrate Judge's (second) Report and Recommendation (Docket Doc. No. 9; Oct. 17, 2002), slip op., p. 5. Admittedly, the notice of appeal construed by the Magistrate Judge set forth no analysis on this point. However, the Application for COA filed on November 6, 2002 (Docket Doc. No. 10) articulated the following analysis:

> The applicant suggests that the denial of the applicant's Due Process (because of his denial of Sixth Amendment rights) is substantially shown by the district court docket notes, the voir dire

>transcript, and the trial transcript (all of which were submitted as exhibits with the § 2255 motion) and the unique facts of this case as follows:(1) only two defendants; (2) the appearance of both applicant and codefendant participating in jury voir dire, having pleaded not guilty; (3) the same petit jury witnessing the applicant as the sole defendant on the morning of trial; (4) the same petit jury's first finding out about the change of codefendant's plea from innocent to guilty during the government's opening statement; (5) the lack of any cautionary instruction <u>at any time during the trial and particularly not contemporaneously</u> with the jury's witnessing the change in co-defendant's plea; (6) the inclusion of the "in and of itself" language in Fifth Circuit Pattern Jury Instruction No. 1.15, literally instructing the jury that any evidence in addition to the guilty plea of the codefendant could be used to convict the applicant; and, finally, the (7) weak evidence as demonstrated by a careful reading of the totality of the trial transcript.

Application for COA filed on November 6, 2002 (Docket Doc. No. 10), ¶ 21. And the Application also articulated as follows:

>[I]n this matter, it is respectfully suggested that the applicant established a record upon reasonable jurists would have asked whether there was either actual or implied jury bias at work in this verdict of this unusual case. *See Smith v. Phillips*, 455 U.S. 209, 225 (U.S. 1982) (bias in the minds of the jurors may be implied given unusual and aggravating circumstances). [¶]29. At a minimum, reasonable jurists would have thought that the question of either actual or implied jury bias was adequate to deserve encouragement to proceed further by ordering the proposed jury questionnaire to be sent to members of the applicant's petit jury. *See Barefoot*, 463 U.S. at 893, n. 4.

Application for COA filed on November 6, 2002 (Docket Doc. No. 10), ¶ 28-9.

V.

THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ERRONEOUSLY CONCLUDES THAT THE NOTICE OF APPEAL CONSTRUED AS AN APPLICATION FOR COA OUGHT TO BE DENIED.

The Magistrate Judge's (second) Report and Recommendation (Docket Doc. No. 9; Oct. 17, 2002) construed the Notice of Appeal filed by counsel as an application for COA and recommended against the issuance of a COA. Summarized here are the following procedural steps that have been taken:

- On October 16, 2002, the Magistrate Judge *sua sponte* construed the petitioner's Notice of Appeal as his application for a COA. *See* Magistrate Judge's (second) Report and Recommendation (Docket Doc. No. 9).

- On November 6, 2002, the applicant filed a document entitled "Application for Certificate of Appealability." *See* Docket Doc. No. 10.

- On November 12, 2002, the applicant filed a motion to strike the Magistrate Judge's (second) Report and Recommendation (Docket Doc. No. 9) as premature.

- An unopposed Motion for Substitution to permit the of the Application for COA filed on November 6, 2002 to be considered as the applicant's application for COA rather than construing the Notice of Appeal as the application for COA was filed on November 12, 2002.

In light of the above procedural changes in this matter, the conclusion of the Magistrate Judge's Second Report and Recommendation is in error since it was the Notice of Appeal that was the source document for his review rather than the Application for COA filed on November 6, 2002 (Docket Doc. No. 10).

### VI.

THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ERRONEOUSLY FAILS TO IDENTIFY ANY ISSUE OF THE FOUR PRESENTED ON WHICH A SUBSTANTIAL SHOWING OF THE VIOLATION OF A CONSTITUTIONAL RIGHT FAILED TO BE MADE AND THEREFORE FALLS SHORT OF COMPLYING WITH THE REQUIREMENTS OF 28 U.S.C. § 2253 THAT SUCH ISSUES BE IDENTIFIED.

The Magistrate Judge's (second) Report and Recommendation (Docket Doc. No. 9; Oct. 17, 2002) paints with a broad brush and fails to specify which of the four issues raised in Applicant's Application for COA filed on November 6, 2002 (Docket Doc. No. 10) have been ruled upon. The applicant respectfully suggests that this error be remedied by a review of Applicant's Application for COA filed on November 6, 2002 (Docket Doc. No. 10).

VII.

In sum, the district court denied the applicant the proper procedural vehicle of discovery and an evidentiary hearing on the facts of this unusual case in which the basic fair trial process was aborted, echoing the types of cases that are serious constitutional violations: *Payne v. Arkansas*, 356 U.S. 560 (1958) (use of coerced confession), *Gideon v. Wainwright*, 372 U.S. 335 (1963) (denial of counsel), and *Tuney v. Ohio*, 273 U.S. 510 (1927) (biased adjudicator). Applicant therefore objects to the Magistrate Judge's Second Report and Recommendation for the foregoing reasons.

It is respectfully requested that the Court take judicial notice of documents in this matter pursuant to Fed. R. Evid. 201.

VIII.   CONCLUSION

WHEREFORE, premises considered, the applicant respectfully requests this Honorable Court reject the Magistrate Judge's Report and Recommendation (Docket Doc. No.

9) and grant the application for a certificate of appealability with respect to whether the district court erred with respect to the following four issues:

1. failing to consider the single-page jury questionnaire attached to the § 2255 petition and incorporated therein as a request for discovery under the applicable rules;

2. incorrectly applying the law of the case doctrine to foreclose consideration of the motion for post-conviction relief over the applicant's objections;

3. failing to order an evidentiary hearing on the issue of actual jury bias; and

4. failing to order an evidentiary hearing on the presumption of implied jury bias.

                                        Respectfully submitted,

                                        */s/ Jon Karl Schmid*
                                        Jon Karl Schmid
                                        Attorney at Law
                                        1201 E. Van Buren
                                        P. O. Box 350
                                        Brownsville, Texas 78522-0350
                                        (956) 542-7441
                                        Attorney for Applicant
                                        Southern Dist. Tx. Bar #21303
                                        Colorado State Bar #015224

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate photocopy of the foregoing Objections to the Magistrate Judge's Second Report and Recommendation (Docket Doc. No. 9; Oct. 17, 2002) has been hand-delivered to the following counsel of record for the respondent, addressed as follows:

> Mark Dowd, Esq.
> Assistant U.S. Attorney
> Office of the U.S. Attorney
>   for the Southern District of Texas,
>   Brownsville Division
> Garza-Vela Court House
> 600 E. Harrison St.
> Brownsville, Texas 78521

Dated at Brownsville, Texas this 14th day of November, 2002.

*[signature]*