UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

NOV 25 2002

Michael N. Milby
Clerk of Court

MARIO TUNCHEZ,                    )
                                  )
        Applicant                 )
                                  )
vs.                               )        Civil No. B-02-CV-98
                                  )        (CR B-98-158-02)
UNITED STATES OF AMERICA,         )
                                  )
        Respondent.               )

UNOPPOSED MOTION FOR LEAVE

TO AMEND CERTIFICATE OF APPEALABILITY

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the Applicant, represented by counsel, and hereby moves to amend the Applicant's Application for Certificate of Appealability (hereinafter "COA"), supplementing it to add the single issue of presenting a separation of powers challenge to the requirement imposed by 28 U.S.C. § 2253 for a COA by a federal prisoner and stating as follows:

I.

THE APPLICABLE RULES OF PROCEDURE EVINCE A BIAS IN FAVOR OF GRANTING LEAVE TO AMEND WHEN JUSTICE SO REQUIRES.

Rule 15(a) of the Federal Rules of Civil Procedure states that a party may amend the party's pleading by leave of court or by written consent.[1] The government has signed the attached certificate of consultation, approving as to form and content this unopposed motion, which meets the "consent in writing" requirement of Rule 15. *See* Fed. R. Civ. P. 15(a). Rule 15(a) evinces a bias in favor of granting leave to amend when justice so requires. *Rolf v. San Antonio*, 77 F.3d 823, 828 (5th Cir. 1996) (circuit court remanded in part because trial court denied leave to amend the complaint without substantial reason). The purpose of Rule 15(a) is to "assist the disposition of the case on its merits, and to prevent pleadings from becoming ends in themselves." *Chitimacha Tribe v. Harry L. Laws Co.*, 690 F.2d 1157, 1163 (5th Cir. 1982).

In the case at bar justice requires that leave be granted to amend the application for certificate of appealability because this motion is made timely, presents a novel but sound separation of powers ("SOP") challenge to the requirement for a COA imposed upon a federal prisoner, will not prejudice the parties hereto, and will not cause undue delay in the proceedings. *See id*. Further, this motion is made without dilatory motive and is the first motion for leave to amend the complaint filed. Finally, recognizing the

---

[1]    Rule 12 of the Rules Governing § 2255 Proceedings authorize the application of the Federal Rules of Criminal and Civil Procedure, "whichever it deems most appropriate," to motions filed under these rules.  Since motions under § 2255 are civil matters, applying F. R. Civ. P. 15 to the question of amending a COA seems most appropriate.

justice in presenting this SOP argument for resolution, the government indicates its consent in writing in the certificate of consultation, as noted above.  *See* Fed. R. Civ. P. 15(a).

## II.

**THE SOLE SUPPLEMENT TO THE APPLICATION FOR COA IS TO CHALLENGE THE REQUIREMENT FOR THE NECESSITY OF THIS FEDERAL PRISONER APPLYING FOR A COA AS VIOLATIVE OF THE SEPARATION OF POWERS DOCTRINE.[2]**

It is respectfully suggested that the COA requirement of 28 U.S.C. § 2253 imposed for federal prisoners assigns to the court, itself, the determination for whether or not it will exercise its jurisdiction.  *See* 28 U.S.C. § 2253. Because Art. III, § 1 of the U.S. Constitution grants such power only to Congress, and since the appellate review of a case or controversy ought to be plenary, the delegation of determining whether or not appellate review will be granted by the court, itself, violates the separation of powers doctrine (hereinafter "SOP").  A short analysis follows in order to show that, in the words of Fed. R. Civ. P. 15(a), justice requires that the amendment be granted.

### A.

AEDPA's undisputed purpose is to promote "the principles of comity, finality and federalism." *Williams v. Taylor*, 529

---

[2]  This suggestion is fleshed out fully in Applicant's Objections (filed on November 25, 2002) to the Magistrate Judge's Third Report and Recommendation, so the issue is already squarely before the District Court.  This amendment is made, however, to conform with the requirements of 28 § 2253 that each issue on which COA is sought be identified and supported.

U. S. 420, 436 (2000). In reviewing a federal conviction, no such principles as articulated in *Williams* apply except finality. And with respect to finality the Supreme Court writes, "[C]onventional notions of finality in criminal litigation cannot be permitted to defeat the manifest federal policy that federal constitutional rights of personal liberty shall not be denied without the fullest opportunity for plenary [appellate] judicial review." *Kaufman v. United States*, 394 U.S. 217, 228 (1969) (in ruling on § 2255 motion).

Only Congress has power to establish the scope of the exercise of federal appellate jurisdiction. *See* U.S. Const., Art. III, § 1.[3] Title I of AEDPA[4], however, violates SOP by shifting to the federal courts the power to determine whether or not they will exercise their jurisdiction. Specifically, this shift is accomplished by AEDPA's delegating to the court the ability to exercise appellate jurisdiction *vel non* with respect to a federal prisoner's § 2255 motion, depending on whether the federal prisoner makes a substantial showing of the violation of a constitutional right. *See* 28 U.S.C. § 2253(c)(1)(B) & 2253(c)(2). The applicant respectfully suggests that this conditional exercise of appellate

---

[3] The first sentence of the U.S. Const., Article III, § 1 reads as follows:

> The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior courts as the Congress may from time to time ordain and establish.

[4] The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, 110 Stat. 1217; Title I is codified at 28 U.S.C. §§ 2241-2155.

authority --- a la *Klein*, *infra* --- that is wholly dependent upon a determination by the court, itself, is a subtle but sure surpassing of the limits separating legislative from judicial power. *See United States v. Klein*, 80 U.S. (13 Wall.) 128, 147 (1871).[5]

### B.

*Murray's Lessee v. Hoboken Land & Improvement Co.*, 18 How. 272, 284 (1856) declared that it was beyond the power of Congress to "withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty." However, where Congress attempts to encroach, limit, or assign judicial power under Article III, § 1, the U.S. Supreme Court has enforced SOP. *See United States v. Duell*, 172 U.S. 576, 582, 589 (1899) (recognizing the "public rights" exception to an otherwise unconstitutional statute violating SOP where Congress acts within the exercise of its Art. I. power --- in this case, authorizing an appeal to the D.C. Court of Appeals from the decision of a patent official, an executive officer).

The SOP principle of *Murray's Lessee* is alive and well and recently reaffirmed, among other cases, by *Northern Pipeline v. Marathon Pipe Line*, 458 U.S. 50 (1983). In

---

[5]    *Klein* was briefed in Applicant's Objections to the Magistrate's Second Objections (docket Doc. No. 13), filed on November 14, 2002. Thus, there is no reason to consume the court's time in repeating a review of *Klein* and its importance in illustrating American SOP jurisprudence.    *See* Applicant's Objections to the Magistrate's Second Objections (docket Doc. No. 14), pp. 3-5.

*Northern Pipeline* the Court writes "Congress cannot 'withdraw from [Art. III] judicial cognizance <u>any</u> matter which, <u>from its nature</u>, is the subject of a suit at the common law, or in equity, or admiralty.'" *Northern Pipeline,* 458 U.S. at 70, n. 23 (quoting *Murray's Lessee v. Hoboken Land & Improvement Co.,* 18 How. 272, 284 (1856) (emphasis added in *Northern Pipeline*). Yet that is precisely what Congress has done, for it has authorized the conditional withdrawal of appellate review in 28 U.S.C. § 2253 of an essential attribute of judicial power in stripping the court of plenary appellate review by requiring a federal prisoner to apply for a COA. *See Mistretta v. U.S.,* 488 U.S. 361 (1989); *Murray's Lessee v. Hoboken Land & Improvement Co.,* 18 How. 272 (1856).

### III.

In sum, justice requires that the applicant be permitted to seek the opinion of the Fifth Circuit on the issue whether the requirement imposed by Congress' 28 U.S.C. § 2253, requiring a federal prisoner to seek a COA, violates SOP for the two reasons set forth in the Amended Application for Certificate of Appealability, attached hereto. *See* Fed. R. Civ. P. 15(a); *Rolf v. San Antonio,* 77 F.3d 823, 828 (5th Cir. 1996); *Chitimacha Tribe v. Harry L. Laws Co.,* 690 F.2d 1157, 1163 (5th Cir. 1982).

IV.

It is respectfully requested that the Court take judicial notice of the documents in its files regarding this matter pursuant to Fed. R. Evid. 201.

V.

Attached to this joint motion for leave is the proposed Amended Application for COA that merely adds the sole additional issue of whether 28 U.S.C. § 2253 violates SOP as applied to a federal prisoner for the two reasons articulated therein.

VI.

## CONCLUSION

WHEREFORE, premises considered, the applicant respectfully requests this Honorable Court to grant this motion to amend the Application for COA to include the issue that the COA requirement of 28 U.S.C. § 2253 as applied to the applicant violates the separation of powers doctrine.

Respectfully submitted,

*Jon Karl Schmid*

Jon Karl Schmid
Attorney at Law
1201 E. Van Buren
P. O. Box 350
Brownsville, Texas 78522-0350
(956) 542-7441
Attorney for Applicant
Southern Dist. Tx. Bar #21303
Colorado State Bar #015224

## CERTIFICATE OF CONSULTATION AND SERVICE

The undersigned counsel hereby certifies that he has consulted with the attorney for the government in this matter and that they have concluded in the exercise of their professional opinion that, in the language of Fed. R. Civ. P. 15(a), the interests of justice require the amendment of the Applicant's Application for COA; and, further, that a true and accurate photocopy of the foregoing Joint Motion for Leave to Amend the COA has been hand-delivered to the following counsel of record for the respondent, addressed as follows:

> Mark Dowd, Esq.
> Assistant U.S. Attorney
> Office of the U.S. Attorney
>   for the Southern District of Texas,
>   Brownsville Division
> Garza-Vela Court House
> 600 E. Harrison St.
> Brownsville, Texas 78521

Dated at Brownsville, Texas, this 29th day of November, 2002.

_Jon K. Schn D_

- - - - - - -

In order to comply with the "written consent" requirement of Fed. R. Civ. P. 15(a), the foregoing motion is approved as to form and content by the government:

> MICHAEL T. SHELBY, U.S. ATTORNEY
> FOR THE U.S. SOUTHERN DISTRICT

BY:

_Lu und_

- - - - - - - - - - - - - -

> Mark Dowd, Esq., Assistant U.S. Attorney
> Office of the U.S. Attorney
>   for the Southern District of Texas,
>   Brownsville Division

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

MARIO TUNCHEZ, )
)
     Petitioner )
)
vs. ) Civil Action No. B-02-098
) Criminal No. B-98-158
UNITED STATES OF AMERICA, )
)
     Respondent )

## ORDER on JOINT MOTION FOR LEAVE TO AMEND APPLICATION FOR CERTIFICATE OF APPEALABILITY

THIS HONORABLE COURT, having considered the Joint Motion for Leave to Amend the Application for Certificate of Appealability (hereinafter "COA"), and being advised in the premises, HEREBY ORDERS THAT:

The motion is hereby granted and the four issues presented in the Applicant's Application for COA filed on November 6, 2002 (Docket Doc. No. 10) shall be augmented by the sole argument presented in the Amended Application for COA, presenting a separation of powers challenge to § 2253; [or]

The joint motion is hereby denied.

Done at Brownsville, Texas, this _____ day of _____ , 2002 .


- - - - - - - - - - - - - - - - -
UNITED STATES DISTRICT JUDGE

Entered on the docket this _____ day of _____ , 2002, by deputy clerk: _____ .

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

MARIO TUNCHEZ,                      )
                                    )
        Applicant                   )
                                    )
vs.                                 )      Civil No. B-02-CV-98
                                    )      (CR B-98-158-02)
UNITED STATES OF AMERICA,           )
                                    )
        Respondent.                 )

APPLICANT'S AMENDED APPLICATION
FOR CERTIFICATE OF APPEALABILITY

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the Applicant, Mario Tunchez, represented by counsel, and hereby files his Amended Application for Certificate of Appealability (hereinafter "COA), stating as follows:

I.   IT IS RESPECTFULLY REQUESTED THAT JUDICIAL NOTICE BE TAKEN OF THE APPLICATION FOR COA IN THIS MATTER.

The applicant respectfully requests this Court to take judicial notice of his Application for COA (Docket Doc. No. 10, filed on November 6, 2002).  *See* Fed. R. Evid. 201.  The applicant requests this Court to incorporate herein in its entirety the language of the Application for COA (Docket Doc. No. 10, filed on November 6, 2002) as if same were set forth verbatim.

Pursuant to the Joint Motion for Leave to Amend and the Order entered granting such joint motion, this Amended

Application for COA adds only the suggestion that Congress has violated the SOP doctrine in requiring the applicant (a federal prisoner) to apply for a COA pursuant to 28 U.S.C. § 2253. A substantial showing of the violation of the applicant's constitutional rights is shown with respect to this SOP issue by the legal legitimacy of the suggestion. Therefore, a COA is respectfully requested on this SOP issue in addition to those four requested by the Amended Application for COA.

## II.

CONGRESS HAS REQUIRED IN 28 U.S.C. § 2253(c) THAT, AS A NECESSARY PREREQUISITE TO THE EXERCISE OF ITS JURISDICTION, THE COURT, ITSELF, MAKE A CONCLUSION *VEL NON* (AS TO WHETHER A SUBSTANTIAL SHOWING OF THE VIOLATION OF A CONSTITUTION RIGHT HAS BEEN SHOWN) IN ORDER TO EXERCISE ITS JURISDICTION IN GRANTING A COA. THUS, 28 U.S.C. § 2253 IMPERMISSIBLY SHIFTS CONGRESSIONAL POWER TO THE COURT, ITSELF, TO DETERMINE WHETHER OR NOT TO EXERCISE ITS JURISDICTION IN VIOLATION OF THE SEPARATION OF POWERS ("SOP") DOCTRINE.

### A.

1.   No federalism rationale applies to § 2255 appeals.[1]

Pre-1996 law did not require a COA by federal prisoners. *See* 28 U.S.C. § 2253(c) (West 1995); *United States v. Hunter,* 101 F.3d 1565 (11th Cir. 1996) (*en banc*). As the Eleventh Circuit Court of Appeals explained, "[U]successful § 2255 movants were not required by preexisting law [the pre-AEDPA statute] to obtain a certificate as a prerequisite to an

---

[1]   Federalism as applied to the review of state convictions is affirmed by two cases issued early this 2003 Term by the U.S. Supreme Court. *See, e.g., Woodford v. Visciotti,* 537 U.S. ___ , No. 02-137 (Nov. 4, 2002) (*per curiam*) (reversing the Ninth Circuit's affirmance of a grant of habeas relief on the basis that the federal court's decision "exceeds the limits imposed on federal habeas review by 28 U.S.C. § 2254(d)."

appeal.  They could appeal without getting a judge to certify anything about the possible merit of their issues."  101 F.3d at 1571.  The *en banc* court continued: "Sections 102 and 103 of the AEDPA changed that, subjecting § 2255 movants to pre-appeal certification requirements (the same ones that apply to § 2254 applicants)."  *Hunter*, 101 F.3d 1565, 1571 (11th Cir. 1996) (*en banc*).  The text of the current version of 28 U.S.C. § 2253(c) in pertinent part (with respect to a federal prisoner proceeding under 28 U.S.C. § 2255) applicable to this matter is set forth below in the following footnote.[2]

AEDPA's undisputed purpose is to promote "the principles of comity, finality and federalism."  *Williams v. Taylor*, 529 U. S. 420, 436 (2000).  In reviewing a federal conviction, no principles articulated in *Williams* apply except finality.  And with respect to finality the Supreme Court writes, "[C]onventional notions of finality in criminal litigation cannot be permitted to defeat the manifest federal policy

---

[2]   28 U.S.C. § 2253(c) reads in pertinent part as follows:

(1)  Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from--

(A)   the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

(B)   the final order in a proceeding under section 2255.

(2)   A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

28 U.S.C.A. § 2253(c) (West 2002 Supp.)

Amended Application for COA                                    Page 3

that federal constitutional rights of personal liberty shall not be denied without the fullest opportunity for <u>plenary [appellate] judicial review</u>." *Kaufman v. United States*, 394 U.S. 217, 228 ((1969) (emphasis supplied) (in ruling on § 2255 motion).

### 2.  <u>Art. III, § 1.</u>

Only Congress has power to establish the scope of the exercise of federal appellate jurisdiction. *See* U.S. Const., Art. III, § 1.[3] Title I of AEDPA[4], however, violates SOP by shifting to the federal courts the power to determine whether or not they will exercise their jurisdiction. *See* 28 U.S.C. § 2253. Specifically, this shift is accomplished by AEDPA's assigning to the court, itself, power to exercise appellate jurisdiction *vel non* with respect to the denial of a federal prisoner's § 2255 motion, depending on a substantial showing of the violation of a constitutional right. *See* 28 U.S.C. § 2253(c)(1)(B) & 2253(c)(2). The conditional exercise of appellate authority that is wholly dependent upon a determination by the court, itself, is a subtle but sure surpassing of the limits separating legislative from judicial

---

[3]  The first sentence of the U.S. Const., Article III, § 1 reads as follows:

> The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior courts as the Congress may from time to time ordain and establish.

[4]  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, 110 Stat. 1217; Title I is codified at 28 U.S.C. §§ 2241-2155.

power. *See United States v. Klein*, 80 U.S. (13 Wall.) 128, 147 (1871).[5]

## III.

**RATHER THAN EXERCISING UNCONDITIONAL AND PLENARY APPELLATE REVIEW OVER THIS ARTICLE III CASE OR CONTROVERSY, THE JUDICIARY BRANCH IS STRIPPED OF ITS POWER TO EXERCISE AN ESSENTIAL ATTRIBUTE OF A TRADITIONAL JUDICIAL FUNCTION BECAUSE CONGRESS REQUIRES A COA FOR A FEDERAL PRISONER BY 28 U.S.C. § 2253(c) IN VIOLATION OF THE SEPARATION OF POWERS DOCTRINE.**

### A.

#### SOP protects the co-equal independence of the Judiciary Branch from Congressional intrusion.

##### 1.    *Murray's Lessee* and *Northern Pipeline*

*Murray's Lessee v. Hoboken Land & Improvement Co.*, 18 How. 272, 284 (1856) declared that it was beyond the power of

---

[5] *Klein* was briefed in Applicant's Objections to the Magistrate's Second Objections (docket Doc. No. 13), filed on November 14, 2002. Thus, there is no reason to consume the court's time in repeating a complete review of *Klein* and its importance in illustrating American SOP jurisprudence. *See* Applicant's Objections to the Magistrate's Second Objections (docket Doc. No. 13), pp. 3-5. The summary argument based on *Klein* is that in 28 U.S.C. § 2253 Congress has authorized the conditional withdrawal of appellate review, for § 2253 requires a federal prisoner to apply for a COA and conditions the exercise of federal appellate jurisdiction upon the existence of a "certain state of things." *See Klein*, 80 U.S. (13 Wall.) 128, __ (1871). That thing being a substantial showing of the deprivation of a constitutional right. Such Congressional requirement in § 2253 echoes the Congressional requirement in the loyalty statute at issue in *United States v. Klein*, 80 U.S. (13 Wall.) 128 (1871). The Supreme Court in *Klein* writes as follows:

> The court has jurisdiction of the cause to a given point; but when it ascertains that a certain state of things exists, its jurisdiction is to cease and it is required to dismiss the cause for want of jurisdiction.

> It seems to us that this is not an exercise of the acknowledged power of Congress to make exceptions and prescribe regulations to the appellate power.

*Klein*, 80 U.S. at 146, 20 S.Ct. at 525.

Congress to "withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty." The SOP principle of *Murray's Lessee* is alive and well and recently reaffirmed among other cases by *Northern Pipeline v. Marathon Pipe Line*, 458 U.S. 50 (1983).

In *Northern Pipeline* the Court writes, "Congress cannot 'withdraw from [Art. III] judicial cognizance <u>any</u> matter which, <u>from its nature</u>, is the subject of a suit at the common law, or in equity, or admiralty.'" *Northern Pipeline*, 458 U.S. at 70, n. 23 (quoting *Murray's Lessee v. Hoboken Land & Improvement Co.*, 18 How. 272, 284 (1856) (emphasis added in *Northern Pipeline*)). Yet the withdrawal of judicial cognizance is what Congress has done in § 2253(c), for it has authorized the conditional withdrawal of appellate review in 28 U.S.C. § 2253 by making the exercise of the court's jurisdiction conditional on the conclusion that the court, itself, will make (as to whether or not a substantial showing of the deprivation of a constitutional right has been shown).

B.

<u>Appellate review is solely a<br>traditional judicial function.</u>

1.   *Mistretta*

*Mistretta v. U.S.*, 488 U.S. 361 (1989) serves as an SOP doctrinal signpost.[6] *Mistretta* considered constitutional challenges against the Sentencing Guidelines. The primary

---

[6]   To serve the Court, save its time, and animate the SOP discussion, the Supreme Court's review of essential SOP jurisprudence from *Mistretta* is substantially excerpted and set forth in Exhibit 1, attached hereto.

constitutional challenge was that Congress had delegated
excessive authority to the Sentencing Commission. The
petitioners also raised a challenge based on SOP. *Mistretta,*
488 at 371. The Court held as follows:

> Although the unique composition and
> responsibilities of the Sentencing Commission give
> rise to serious concerns about a disruption of the
> appropriate balance of governmental power among the
> coordinate Branches, we conclude, upon close
> inspection, that petitioner's fears for the
> fundamental structural protections of the
> Constitution prove, at least in this case, to be
> "more smoke than fire," and do not compel us to
> invalidate Congress' considered scheme for
> resolving the seemingly intractable dilemma of
> excessive disparity in criminal sentencing.

*Mistretta,* 488 at 385. Writing for the Court, Justice
Blackmun (with only J. Scalia dissenting) identified the
reason for rejecting the SOP challenge: "As we described at
the outset, the sentencing function long has been a
*peculiarly shared responsibility among the Branches* of
Government and has never been thought of as the exclusive
constitutional province of any one Branch." *Mistretta,* 488
U.S. at 391 (citation omitted) (emphasis added).

As applied to 28 U.S.C. § 2253, the Court's recent
review of SOP jurisprudence in *Mistretta* confirms the
legitimacy of the suggestion that plenary appellate review of
a case or controversy arising under Article III, § 1 is
required by the SOP doctrine. *See U.S. Steel Co. v.
Citizens,* 523 U.S. 83, 103 (1998) ("Article III, § 2, of the
Constitution extends the 'judicial Power' of the United
States only to 'Cases' and 'Controversies.' We have always
taken this to mean cases and controversies of the sort

traditionally amenable to, and resolved by, the judicial process." (citation omitted)).

### C.

**Plenary appellate review is an essential judicial attribute unlimited by Congress' Art. III § 1 power.**

Even when Congress assigns matters to administrative agencies, or to legislative courts, it has generally provided, and the U.S. Supreme Court has suggested, that it may be required to provide for Art. III judicial review. *See Atlas Roofing Co. v. Occupational Safety and Health Review Comm'n*, 430 U.S., at 455, n. 13; *cf. United States v. Duell*, 172 U.S. 576 (1899) (recognizing the "public rights" exception to an otherwise unconstitutional statute violating SOP where Congress acts within the exercise of its Art. I. power --- in this case, authorizing an appeal to the D.C. Court of Appeals from the decision of a patent official, an executive officer). It is therefore respectfully suggested that when Congress acts within its authority under Art. III, § 1, it may not constitutionally circumscribe plenary appellate review because such is an essential attribute of judicial power. *E.g., Commodity Fut. Trading Comm'n v. Schor*, 478 U.S. 833, 852 (in reviewing SOP challenges, "[a]mong the factors upon which we have focused are the extent to which the 'essential attributes of judicial power' are reserved to Article III courts." (citation omitted)) (1986).

IV.        Substantial Showing.

A   substantial   showing   of   the   violation   of   the
applicant's  constitutional  rights  is  shown  with  respect  to
this SOP issue by the legal legitimacy of the suggestion.

It  is  also  respectfully  requested  that  the  Court  take
judicial notice of the documents in its files regarding this
matter pursuant to Fed. R. Evid. 201.

V.

## CONCLUSION

For the foregoing reasons, it is respectfully suggested
that Congress has violated the SOP doctrine in requiring the
applicant (a federal prisoner) to apply for a COA pursuant to
28 U.S.C. § 2253.

VI.

WHEREFORE,   premises   considered,   the   applicant
respectfully  requests  this  Honorable  Court  to  grant  his
Amended Application for a COA with respect to this SOP issue
in   addition   to   those   four   requested   by   the   Amended
Application for COA.

Respectfully submitted,

*Jon Karl Schmid*

Jon Karl Schmid
Attorney at Law
1201 E. Van Buren
P. O. Box 350
Brownsville, Texas 78522-0350
(956) 542-7441
Attorney for Applicant
Southern Dist. Tx. Bar #21303
Colorado State Bar #015224

## CERTIFICATE OF CONSULTATION AND SERVICE

The undersigned hereby certifies that he has consulted with Mr. Mark Dowd, Esq., counsel for the respondent, and that the government opposes this motion and, further, that a true and accurate photocopy of the foregoing Amended Application for Certificate of Appealability has been hand-delivered to the following counsel of record for the respondent, addressed as follows:

> Mark Dowd, Esq.
> Assistant U.S. Attorney
> Office of the U.S. Attorney
>   for the Southern District of Texas,
>   Brownsville Division
> Garza-Vela Court House
> 600 E. Harrison St.
> Brownsville, Texas

Dated at Brownsville, Texas this 29th day of November, 2002.

_Jon Karl ahd_

**Exhibit 1**

**attached to the Applicant's Amended Application for COA**

**(filed on Nov. 29, 2002)**

**in**

***Tunchez v. U.S.***

**Civil Action No. B-02-098**
**(Criminal No. B-98-158)**

**in the United States District Court**

**for the Southern District of Texas,**

**Brownsville Division**

The United States Supreme Court in *Mistretta v. United States*, 488 U.S. 361, 381-384 (1989) reviewed American SOP jurisprudence as follows:

> This Court consistently has given voice to, and has reaffirmed, the central judgment of the Framers of the Constitution that, within our political scheme, the separation of governmental powers into three coordinate Branches is essential to the preservation of liberty. See, e. g., *Morrison v. Olson*, 487 U.S. 654, 685-696 (1988); *Bowsher v. Synar*, 478 U.S., at 725. Madison, in writing about the principle of separated powers, said: "No political truth is certainly of greater intrinsic value or is stamped with the authority of more enlightened patrons of liberty." The Federalist No. 47, p. 324 (J. Cooke ed. 1961).
>
> In applying the principle of separated powers in our jurisprudence, we have sought to give life to Madison's view of the appropriate relationship among the three coequal Branches. Accordingly, we have recognized, as Madison admonished at the founding, that while our Constitution mandates that "each of the three general departments of government [must remain] entirely free from the control or coercive influence, direct or indirect, of either of the others," *Humphrey's Executor v. United States*, 295 U.S. 602, 629 (1935), the Framers did not require -- and indeed rejected -- the notion that the three Branches must be entirely separate and distinct. See, e. g., *Nixon v. Administrator of General Services*, 433 U.S. 425, 443 (1977) (rejecting as archaic complete division of authority among the three Branches); *United States v. Nixon*, 418 U.S. 683 (1974) (affirming Madison's flexible approach to separation of powers). Madison, defending the Constitution against charges that it established insufficiently separate Branches, addressed the point directly. Separation of powers, he wrote, "d[oes] not mean that these [three] departments ought to have no *partial agency* in, or no *controul* [sic] over the acts of each other," but rather "that where the *whole* power of one department is exercised by the same hands which possess the *whole* power of another department, the fundamental principles of a free constitution, are subverted." The Federalist No. 47, pp. 325-326 (J. Cooke ed. 1961) (emphasis in original). See *Nixon v. Administrator of General*

*Services*, 433 U.S., at 442, n. 5. Madison recognized that our constitutional system imposes upon the Branches a degree of overlapping responsibility, a duty of interdependence as well as independence the absence of which "would preclude the establishment of a Nation capable of governing itself effectively." *Buckley* v. *Valeo*, 424 U.S. 1, 121 (1976). In a passage now commonplace in our cases, Justice Jackson summarized the pragmatic, flexible view of differentiated governmental power to which we are heir:

> "While the Constitution diffuses power the better to secure liberty, it also contemplates that practice will integrate the dispersed powers into a workable government. It enjoins upon its branches separateness but interdependence, autonomy but reciprocity." *Youngstown Sheet & Tube Co.* v. *Sawyer*, 343 U.S. 579, 635 (1952) (concurring opinion).

In adopting this flexible understanding of separation of powers, we simply have recognized Madison's teaching that the greatest security against tyranny -- the accumulation of excessive authority in a single Branch -- lies not in a hermetic division among the Branches, but in a carefully crafted system of checked and balanced power within each Branch. "[T]he greatest security," wrote Madison, "against a gradual concentration of the several powers in the same department, consists in giving to those who administer each department, the necessary constitutional means, and personal motives, to resist encroachments of the others." The Federalist No. 51, p. 349 (J. Cooke ed. 1961). Accordingly, as we have noted many times, the Framers "built into the tripartite Federal Government . . . a self-executing safeguard against the encroachment or aggrandizement of one branch at the expense of the other." *Buckley* v. *Valeo*, 424 U.S., at 122. See also *INS* v. *Chadha*, 462 U.S. 919, 951 (1983).

It is this concern of encroachment and aggrandizement that has animated our separation-of-powers jurisprudence and aroused our vigilance against the "hydraulic pressure inherent within each of the separate Branches to exceed the outer limits of its power." *Ibid.* Accordingly, we have not hesitated to strike down provisions of law that either accrete to a single Branch powers more

appropriately diffused among separate Branches or that undermine the authority and independence of one or another coordinate Branch. For example, just as the Framers recognized the particular danger of the Legislative Branch's accreting to itself judicial or executive power,[1] so too have we invalidated attempts by Congress to exercise the responsibilities of other Branches or to reassign powers vested by the Constitution in either the Judicial Branch or the Executive Branch. *Bowsher* v. *Synar*, 478 U.S. 714 (1986) (Congress may not exercise removal power over officer performing executive functions); *INS* v. *Chadha*, *supra* (Congress may not control execution of laws except through Art. I procedures); *Northern Pipeline Construction Co.* v. *Marathon Pipe Line Co.*, 458 U.S. 50 (1982) (Congress may not confer Art. III power on Art. I judge). By the same token, we have upheld statutory provisions that to some degree commingle the functions of the Branches, but that pose no danger of either aggrandizement or encroachment. *Morrison* v. *Olson*, 487 U.S. 654 (1988) (upholding judicial appointment of independent counsel); *Commodity Futures Trading Comm'n* v. *Schor*, 478 U.S. 833 (1986) (upholding agency's assumption of jurisdiction over state-law counterclaims).

In *Nixon* v. *Administrator of General Services*, *supra*, upholding, against a separation-of-powers challenge, legislation providing for the General Services Administration to control Presidential papers after resignation, we described our separation-of-powers inquiry as focusing "on the extent to which [a provision of law] prevents the Executive Branch from accomplishing its constitutionally assigned functions." 433 U.S., at 443 (citing *United States* v. *Nixon*, 418 U.S., at 711-712.[2] In cases specifically involving the Judicial Branch, we have expressed our vigilance against two dangers: first, that the Judicial Branch neither be assigned nor allowed "tasks that

---

[1]    Madison admonished: "In republican government the legislative authority, necessarily, predominates." The Federalist No. 51, p. 350 (J. Cooke ed. 1961). [Note: this is footnote number twelve in the *Mistretta* opinion.]

[2]    If the potential for disruption is present, we then determine "whether that impact is justified by an overriding need to promote objectives within the constitutional authority of Congress." *Nixon* v. *Administrator of General Services*, 433 U.S., at 443. [Note: this is footnote thirteen in the *Mistretta* opinion.]

are more properly accomplished by [other] branches," *Morrison* v. *Olson*, 487 U.S., at 680-681, and, second, that no provision of law "impermissibly threatens the institutional integrity of the Judicial Branch." *Commodity Futures Trading Comm'n* v. *Schor*, 478 U.S., at 851.

**Exhibit 2**

**attached to the Applicant's Amended Application for COA**

**(filed on Nov. 29, 2002)**

**in**

***Tunchez v. U.S.***

**Civil Action No. B-02-098**
**(Criminal No. B-98-158)**

**in the United States District Court**

**for the Southern District of Texas,**

**Brownsville Division**

Jon Karl Schmid*
Attorney at Law
P. O. Box 350; 1201 E. Van Buren
Brownsville, Texas 78522-0350
(956) 542-7441

Hand-Delivered: Monday; November 25, 2002; 1330

Mark Dowd, Esq.
Assistant U.S. Attorney
  for the Southern District of Texas
  Brownsville Division
Garza-Vela U.S. Court House
Brownsville, Texas

Re: <u>U.S. v. Mario Trevino Tunchez</u>;
    Criminal No. B-98-198
    Civil Action No. B-02-098

Dear Mr. Dowd:

Thank you for talking with me by phone today just before noon about the above-referenced matter.

This letter confirms my understanding of the government's position. The government will not oppose the applicant's motion to amend the application for certificate of appealability ("COA") to include the sole issue of the constitutional issue outlined below.

As I suggested to you last Friday, the requirement for a federal prisoner proceeding under § 2255 to seek a COA appears to violate the separation of powers doctrine. Such violation occurs in the delegation by Congress to the court of the conditional grant of jurisdiction to it under 28 U.S.C. § 2253. If the court concludes that a substantial showing of the violation of a constitutional right has been shown, then it may exercise jurisdiction; if the court concludes otherwise, it may not exercise jurisdiction. Put another way, it is the court, itself, and not Congress that determines the exercise/availability of appellate jurisdiction in requiring a <u>federal</u> prisoner to seek a COA. (Of course, § 2254 is outside the scope of this argument because of federalism concerns. Clearly, there are no such concerns of federalism urging the limitation of plenary appellate review for a federal prisoner.)

Mark Dowd, Esq.
Page Two
November 25, 2002; 1330
- - - - - - - - - - - -

     The deprivation of liberty in violation of the
U.S. Constitution creates a "case or controversy" over
which the federal district court exercises power
granted to it by Congress pursuant to Article III, § 1.
Absent concerns of federalism, where the federal courts
exercise power pursuant to Art. III, § 1, such power
must include, I suggest, plenary appellate review. *See
U.S. v. Kaufman*, 394 U.S. 217 (1969); *Commodity Fut.
Trading Comm'n v. Schor*, 478 U.S. 833 (1986); *United
States v. Klein*, 80 U.S. (13 Wall.) 128 (1871); *Northern
Pipeline v. Marathon Pipe Line*, 458 U.S. 50 (1982). The
Court, as you know, is more lenient in accepting SOP
machinations when Congress acts pursuant to its Article I
power. *See, e.g., Commodity Futures Trading Comm'n v.
Schor*, 478 U.S. 833 (1986); *United States v. Duell*, 172
U.S. 576 (1899).

     Please promptly correct any misunderstanding I may
have of the government's position in not opposing the
procedural presentation of the SOP issue in an amended
application for COA.

     Thank you as always for your professional attention to
this matter.

                              Very truly yours,

                              Jon Karl Schmid

JKS:

- - - - - - -
* Not Certified by the Texas Board of Specialization;
Member, Colorado State Bar, U.S. Southern District of
Texas, Brownsville Division; Appearance in Texas by leave
of court. Not affiliated with any law firm or attorney.