20

United States District Court
Southern District of Texas
FILED

DEC 1 9 2002

Michael N. Milby
Clerk of Court

**Jon Karl Schmid***
**Attorney at Law**
**1201 E. Van Buren**
**P. O. Box 350**
**Brownsville, Texas 78522-0350**
**(956) 542-7441**

**Thursday: December 19, 2002**
**Hand-delivered**

**The Honorable Hilda G. Tagle,**
**Judge,**
**United States District Court**
**  for the Southern District of Texas,**
**  Brownsville Division**
**600 E. Harrison**
**Brownsville, Texas**

**Re:  <u>U.S. v. Mario Trevino Tunchez;</u>**
**     Docket No. B-02-CV-98**

**Dear Judge Tagle:**

**    I'm writing as an officer of the court, cognizant
of my commitment to describe any changes in the law
that may assist or inform the Court, either in support
of my client's position or adversely.**

**    Accordingly, this letter reports that supplemental
authority recently provided (Dkt. No. 17; December 3,
2002) has been completely <u>superseded</u> by the issuance on
December 16, 2002, of a revised opinion by the 5th
Circuit in the same case. In sum, the passage cited by
the undersigned counsel (set forth in Supplemental
Authority (Dkt No. 17) and quoted herein on page two)
has been omitted. The *Herrera* case therefore no longer
serves as valid precedent. Details follow.**

**    With respect to supporting the novel but valid
observation (set forth in the applicant's Amended COA)
that Congress has violated the separation of powers
doctrine in two ways by requiring (in 28 U.S.C. §
2253(c)) a <u>federal</u> prisoner to apply for a Certificate
of Authority (hereinafter "COA"), I submitted
supplemental authority in a letter filed December 3,
2002 (Dkt. No. 17). That letter enclosed the *Herrera***

The Honorable Hilda G. Tagle,
U.S. District Court
 for the Southern District of Texas,
 Brownsville Division
Page Two
December 19, 2002 (hand-delivered)
- - - - - - - - - - - - - - - - - - - -

case, then recently issued by the 5th Circuit sitting
*en banc* on November 26, 2002. The letter excerpted the
following language from the 5th Circuit's original *en
banc* slip opinion in *U.S. v. Herrera*, No. 00-51177 (5th
Cir. Nov. 26, 2002) (*per curiam*), as follows:

> But, under our constitutional concepts of
> separation of powers, only Congress can define
> what constitutes "regular use" and what
> constitutes "an extended period of time"; and
> neither the prosecutor nor the jury should be
> permitted to determine those matters on an ad
> hoc case by case basis." *Herrera*, slip op.,
> at 16 (emphasis in original).

Based on that language the letter continued, to-
wit:

> Likewise, I suggest that it is a
> violation of the separation of powers doctrine
> for the Judiciary Branch to determine the
> exercise of its appellate jurisdiction or not
> on an "ad hoc case by case basis," for that is
> a role delegated to Congress, not the court by
> U.S. Const., Art. III, § 1. *See Herrera* [Nov.
> 26, 2002, superseded] slip op., at 16.

Supplemental Authority (Dkt. No. 17; Dec. 3, 2002), p.
1.

While the vitality of the second paragraph quoted
above has not been adversely affected, the revised
opinion in *Herrera* no longer serves as valid precedent
to support such statement. The passage quoted in the
first paragraph above has been stricken completely from
the superseded *Herrera* opinion of December 16, 2002.
The revised, superseding opinion in *Herrera* accompanies
this letter as a service to the Court.

The Honorable Hilda G. Tagle,
U.S. District Court
   for the Southern District of Texas,
   Brownsville Division
Page Three
December 19, 2002 (hand-delivered)
- - - - - - - - - - - - - - - - - - - -


     Unlike language appearing in *Diamond v. United
States*, 432 F.2d 35 (9th Cir. 1970) and *Ind. Federation
v. TWA*, 682 F.Supp. 1003 (W.D. Mo. 1988), the 5th
Circuit in the revised *Herrera* opinion does not
expressly indicate that the revised opinion supersedes
the original opinion. By implication, however, the
words "revised" at the top of the slip opinion coupled
with the fact that the "revised opinion" was issued
after the original opinion urge the undeniable
conclusion that by implication the version of November
26, 2002, is indeed superseded by that of December 16,
2002.

     This letter accordingly advises the Court and
fulfills counsel's duty as sworn to by the oath of
admission to this bar that, in pertinent part, the
undersigned "will discharge the duties of attorney and
counselor of this court faithfully, that I will demean
myself uprightly under the law and the highest ethics
of our profession . . . ." Local R. 83.1(I) (U.S.
Southern District Attorney's Oath of Admission).

     A true and accurate copy of this letter has been
delivered to Mark Dowd, Esq., counsel for the U.S.
Attorney's Office in Brownsville, Texas.


                    Respectfully submitted,

                    *Jon Karl Schmid*
                    Jon Karl Schmid


JKS:     /    Enclosures: as stated
cc: Mark Dowd, Esq., USDOJ, Brownsville, Texas.
- - - - - - -
* Not Certified by the Texas Board of Specialization;
Member, Colorado State Bar, U.S Southern District of Texas,
Brownsville Division; Appearance in Texas by leave of
Court.

REVISED DECEMBER 16, 2002

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————

No. 00-51177

———————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ISMAEL HOLGUIN HERRERA,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Western District of Texas
_____

November 26, 2002

Before KING, Chief Judge, and JOLLY, HIGGINBOTHAM, DAVIS, JONES,
SMITH, WIENER, BARKSDALE, EMILIO M. GARZA, DeMOSS, BENAVIDES,
STEWART, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:

Primarily at issue is the correct standard of review for
Ismael Holguin Herrera's sufficiency of the evidence challenge to
his 18 U.S.C. § 922(g)(3) conviction (possessing firearms while
"unlawful user" of controlled substance). **AFFIRMED.**

I.

In a multi-count indictment against nine defendants, Herrera
was charged in three: count 1, violation of 21 U.S.C. §§ 841(a)(1)
and 846 (conspiracy to distribute more than 500 grams of cocaine);

count 14, violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1) and 846 (possession with intent to distribute more than 500 grams of cocaine); and count 16, violation of 18 U.S.C. § 922(g)(3) (*on or about 9 December 1999*, possession of firearms while being unlawful user of, and addicted to, controlled substance). A jury convicted Herrera on each count.

Herrera appealed, claiming insufficient evidence for each conviction; a divided panel of our court affirmed two (counts 1 and 14) but reversed on count 16. *United States v. Herrera*, 289 F.3d 311 (5th Cir.), *vacated pending en banc review*, 300 F.3d 530 (5th Cir. 2002) (en banc). United States District Judge Adrian Duplantier, sitting by designation, dissented from the reversal. 289 F.3d at 325.

Rehearing en banc was granted, limited to the reversed § 922(g)(3) conviction. *Herrera*, 300 F.3d 530.

II.

The only issue before our en banc court is the sufficiency of the evidence for Herrera's conviction for possessing firearms on or about 9 December 1999, while being an "unlawful user" of a controlled substance, in violation of § 922(g)(3). The controlling question is the applicable standard of review, because Herrera failed in district court to move for judgment of acquittal (JA) on the issue at hand.

2

Herrera moved for a FED. R. CRIM. P. 29 JA after the Government presented its case in chief. For the § 922(g)(3) count at issue, however, he did so only on one specific ground. Section 922(g)(3) prohibits possessing firearms if the accused is then either *addicted to* a controlled substance (*not* at issue here) or *an unlawful user* of it. For that count, Herrera's Rule 29 motion asserted only that there was insufficient evidence to convict on the "addicted to" alternative. Restated, he neither contested the "unlawful user" alternative nor asserted he was not an "unlawful user" when he possessed firearms on or about 9 December 1999.

Following denial of his motion, Herrera presented evidence, including his testifying. At the close of evidence, Herrera's JA motion based on the same, earlier asserted grounds was denied.

Post-verdict, Herrera failed to move for JA until long after the seven-day period for filing the motion had run. *See* FED. R. CRIM. P. 29(c). The motion was denied as time-barred; Herrera does not contest that ruling.

Herrera maintains we should review under the usual standard for sufficiency claims: evidence is sufficient if, "after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt". ***United States v. Daniel***, 957 F.2d 162, 164 (5th Cir. 1992). *See also **In re Winship***, 397 U.S. 358, 364 (1970).

3

Instead, because Herrera did not seek JA for the issue at hand, our review is far more narrow. Where, as here, a defendant asserts *specific grounds* for a specific element of a specific count for a Rule 29 motion, he waives all others for that specific count. *E.g., United States v. Belardo-Quinones*, 71 F.3d 941, 945 (1st Cir. 1995); *United States v. Dandy*, 998 F.2d 1344, 1357 (6th Cir. 1993). As noted, Herrera claimed insufficient evidence only concerning his status as an "addict", not as an "unlawful user"; and he did not claim insufficient evidence concerning whether he was an "unlawful user" on or about the time he possessed the firearms.

Accordingly, "[b]ecause [Herrera] waived any objection to the sufficiency of the evidence [for the points now at issue], our review is limited to determining whether ... the record is devoid of evidence pointing to guilt". *United States v. Delgado*, 256 F.3d 264, 274 (5th Cir. 2001) (internal quotation marks and citation omitted). *See also United States v. Carbajal*, 290 F.3d 277, 290 (5th Cir. 2002), *petition for cert. filed*, ___ U.S.L.W. ___ (U.S. 18 July 2002) (No. 02-5898); *Daniel*, 957 F.2d at 164.ˑ

---

ˑIn applying this very narrow standard of review, and contrary to the concerns expressed by the dissent, we follow well-settled, not "new", rules of criminal procedure. For the count at issue, Herrera chose to make a quite specific, *not a general*, motion for judgment of acquittal; he moved for such relief only pre-verdict (again, he does not contest the denial, as untimely, of his post-verdict motion); and we, *not the parties*, determine the appropriate standard of review, as discussed, for example, in our controlling en banc decisions in *United States v. Pierre*, 958 F.2d 1304, 1311 n.1 (5th Cir.) (en banc), *cert. denied* 506 U.S. 898 (1992), and

4

Therefore, we review the record only to determine whether it is devoid of evidence that, on or about 9 December 1999, Herrera was an "unlawful user" of a controlled substance while in possession of firearms. Along this line, the Government conceded in its supplemental en banc brief that, for a defendant to be an "unlawful user" for § 922(g)(3) purposes, his "drug use would have to be with regularity and over an extended period of time". The Government reiterated this at en banc oral argument: "We certainly wouldn't charge one time use. It would have to be over a period of time".

Pursuant to our record-review, the record is *not* devoid of evidence that, on or about 9 December 1999, Herrera unlawfully used cocaine while possessing firearms.

---

*United States v. Vonsteen*, 950 F.2d 1086, 1091 (5th Cir.) (en banc), *cert. denied* 505 U.S. 1223 (1992).

Needless to say, the applicable "devoid of evidence" standard is quite different from, and far more narrow than, review for plain error. *Compare* **Delgado**, 256 F.3d at 274, *with* **United States v. Olano**, 507 U.S. 725, 731-37 (1993) (through plain error review, court has *discretion* to correct "clear" or "obvious" error that affects substantial rights *and* seriously affects fairness, integrity, or public reputation of judicial proceedings). *See* FED. R. CRIM. P. 52(b).

Simply put, application of this narrow standard is not to avoid issues — far from it. Instead, it is in keeping with well-established rules of criminal procedure that ensure issues are tried in the trial, not the appellate, court.

### III.

For the foregoing reasons, the conviction for violation of 18 U.S.C. § 922(g)(3) (count 16) is **AFFIRMED**. For the other two counts of conviction (1 and 14), the applicable portions of the panel opinion, 289 F.3d at 314-19, are reinstated. Therefore, the judgments on all three counts are

*AFFIRMED.*

DeMOSS, Circuit Judge, dissenting.
SMITH, Circuit Judge, joins in this dissent.

I am truly amazed at the ingenuity displayed by the *en banc* majority in fashioning a new rule of criminal procedure, which permits them to dispose of this case without addressing some tough substantive issues. If our primary purpose as appellate judges is to make appellate review as difficult as possible for criminal defendants, then I congratulate my colleagues for this new hyper technicality that they uncovered in Fed. R. Crim. P. 29. The majority's new rule is clearly in conflict with the long standing precedents of this Circuit starting with *Huff v. United States*, 273 F.2d 56, 60 (5th Cir. 1959), and most recently reaffirmed in *United States v. Brace*, 145 F.3d 247 (5th Cir. 1998)(en banc) where we stated that in criminal trials sufficiency of the evidence issues may be preserved with general objections. *Id.* at 258 n.2.

In an effort to dance around this prior precedent, the majority attempts to frame its new rule in language that limits the conflict: "Where, as here, a defendant asserts <u>specific</u> grounds for a <u>specific</u> element of a <u>specific</u> count for a rule 29 motion, he waves all others for that <u>specific</u> count."  (Emphasis added). Given the level of specificity required, this new rule hopefully will find no application except here in *Herrera*.

The real problem with the majority's new rule is that there is absolutely nothing in Fed. R. Crim. P. 29 as it now exists nor in the new Fed. R. Crim. P. 29 that will take effect on December 1, 2002, which expressly refers to or even inferentially supports the sanction of waiver that the majority applies in this case.  To the contrary, both the existing and the new Rule 29 expressly indicate that a defendant is not required to move for a judgment of acquittal before the court submits the case to the jury as a prerequisite to moving for a judgment of acquittal after the jury has returned its verdict and been discharged.  The motion for judgment of acquittal in this case was made orally before the case was submitted to the jury and it seems grossly unfair to me to put defense counsel under the burden of waiving grounds that he did not specifically speak to, when he need not have been speaking at all.

Furthermore, the issue of whether Herrera waived his motion for acquittal, and thus failed to preserve error, was never raised by the government in this case before the trial court or on appeal, neither in its original brief to the panel nor in its petition for en banc reconsideration nor in its supplemental en banc brief.  The record is clear that counsel for Herrera did, in fact, make a motion for judgment of acquittal on the basis of insufficiency of the evidence as to each of the counts in which Herrera was charged. Surely if the prosecutors thought this motion did not satisfy the

8

requirements of Rule 29, they would have been screaming and hollering about that deficiency from the very beginning. In *United States v. Menesses*, 962 F.2d 420 (5th Cir. 1992), this court faced a somewhat similar situation in which the government argued, for the first time at oral argument, that because the defendant failed to object to the sufficiency of the evidence at trial, the court should be bound by the stricter standard of review, i.e. plain error. In an opinion written by Judge Reynaldo G. Garza, the court refused to review the evidence under the stricter standard, pointing out that the government referred to the usual standard of review in its brief, and that the government could not, at the time of oral argument, change its position on this issue. Here in Herrera's case, we have the additional fact that, in its petition for en banc reconsideration, the government made no mention whatsoever of any deficiencies in Herrera's motion for judgment of acquittal or any requirement for reviewing the evidence on the plain error standard. I have great trouble, therefore, understanding why the en banc majority feels compelled *sua sponte* in this case to raise this issue at en banc oral argument and rely upon the concept of "waiver" as a basis for its ruling. As I understand our plain error analysis, waiver occurs when a party, through counsel, affirmatively and expressly releases or gives up a claim. There is absolutely nothing in this record that can be

9

interpreted as conduct on the part of counsel for Herrera that released or waived his plea of not guilty to the charge of being an "unlawful user." For these reasons, I respectfully dissent from the decision of the en banc majority to apply the stricter standard, i.e. "devoid of evidence," in testing the sufficiency of the evidence in this case.

Even more fundamentally, I think the en banc majority errs in making any judgment about the sufficiency of the evidence without first coming to grips with the essential definitional problem that this case raises, i.e., what do the words "unlawful user," as they appear in § 922(g)(3), require in the way of proof beyond a reasonable doubt? In order to answer that question, I would suggest that this court should have addressed and answered the following questions:

1.  Is there a statutory definition for the term "unlawful user?"

2.  If Congress has not statutorily defined the term "unlawful user," can we determine what Congress intended when it used such words by looking at:
    (i)   the statutory context in which Congress used such words;
    (ii)  the legislative history which proceeded the adoption of such words by Congress;
    (iii) the common and ordinary meaning of such words, if any.

3.  If we are unable to determine the meaning which Congress intended for the words "unlawful user," should we then hold that the

10

words are constitutionally unenforceable
because of vagueness?

4.   If we can define the term "unlawful user," is
     the evidence in this case sufficient to
     support a determination that Herrera was, in
     fact, an "unlawful user?"

5.   If we determine that Hererra was, in fact, an
     "unlawful user," does the evidence support a
     finding that the guns which Herrera possessed
     were "possessed in or affecting interstate
     commerce" and if so, when that possession
     occurred?

6.   If we determine that the guns were possessed
     in or affecting commerce, does the evidence
     establish that Herrera's status, as an
     "unlawful user" and his "possession of guns in
     or affecting commerce," occurred within
     reasonable proximity of each other, around the
     date of December 9, 1999?

Obviously, I would put the burden of proof and persuasion on

the government to produce sufficient evidence to support a jury

finding beyond a reasonable doubt as to the answers to questions 4,

5, and 6 above.

In addressing the definitional problems raised by this case,

the district court instructed the jury as follows:

An addict is defined as any individual who
habitually uses any narcotic drug so as to
endanger the public morals, health, safety, or
welfare, or who is so far addicted to the use
of narcotic drugs as to lost the power of self
control with reference to his addiction.

The term 'user' is defined in accordance with
its common and ordinary meaning.

11

The district court's definition of "an addict" is a verbatim use of the definition set forth 21 U.S.C. § 802(1). As indicated above, the district court did not define the statutory term "unlawful user" as it appears in § 922(g)(3), but instead defined the term "user." Neither the prosecutor nor defense counsel proffered a definition of "unlawful user" to the district court for use in the instruction; and neither the prosecutor nor defense counsel raised any objection to the omission by the district court of the word "unlawful" when it gave its definition of "user." At oral argument before the panel, the government conceded that the evidence and testimony produced in this case did not constitute sufficient evidence to support a jury finding that Herrera was "addicted to" a controlled substance. If the prosecutor had made this concession to the district court at the close of the government's evidence when the defense counsel for Herrera moved for judgment of acquittal for insufficiency of evidence on this count, I assume that the district court would have granted that motion as to the "addicted to" element of the count, and the charge would have gone to the jury only on the "unlawful user" element, which the district court defined as simply a "user" element. In any event, the jury made no separate finding as to whether Herrera was an "unlawful user of" or was "addicted to" a controlled substance as charged in count 16, but simply found Herrera "guilty

12

as to count 16" in its verdict form. So, we are faced on appeal with determining the validity of a jury conviction on a count as to which the government concedes it did not prove one statutory element and the other element was not submitted to the jury in the form stated by the statute. The en banc majority, like the district court, simply ignores the definitional problems surrounding the words "unlawful user."

During the time that Herrera's case was pending in the district court and coming up to our court on appeal, a panel of our court was deciding the case of *United States v. Emerson*, 270 F.3d 203 (5th Cir. 2001) which held that the Second Amendment "protects the right of individuals, including those not then actually a member of any militia or engaged in active military service or training, to privately possess and bear their own firearms, such as the pistol involved here, that are suitable as personal, individual weapons and are not of the general kind or type excluded in *Miller*." *Id.* at 260.

Defense counsel for Herrera made a cryptic motion at the conclusion of the evidence in Herrera's case that he was entitled to Second Amendment protections and count 16 violated those protections. While Herrera's case was pending on our appellate docket, the Supreme Court of United States denied certiorari in *Emerson*, 122 S. Ct. 2362 (2002)(mem.), and consequently the panel

13

decision in *Emerson* remains as the binding law in the Fifth
Circuit.  *Emerson* clearly recognizes that the Second Amendment
right to keep and bear arms "does not mean that those rights may
never be made subject to any limited, narrowly tailored specific
exceptions or restrictions for particular cases that are reasonable
and not inconsistent with the right of Americans generally to
individually keep and bear their private arms as historically
understood in this country." *Id.* at 261.

In light of *Emerson*, I would urge that Second Amendment rights
can be abridged only if the restriction survives strict scrutiny.
To the best of my research, Herrera's case presents the first
occasion on which our court has been asked to evaluate the
appropriateness of § 922(g)(3) in light of our circuit's
interpretation of the Second Amendment in *Emerson*.  I realize that
there are some judges on our court who turn-up their noses and
snicker at the Second Amendment, but until changed by a subsequent
decision of the Supreme Court or by an en banc reconsideration in
our court, *Emerson* stands as the applicable law in our circuit.

If some other statute of Congress purported to take away or
restrict (1)"the right of the people peaceably to assemble and to
petition the government for redress of grievances" under the First
Amendment, or (2)"the right of the people to be secure in their
persons, houses, papers, and effects against unreasonable searches

14

and seizures" under the Fourth Amendment, or (3) the right of any person to be free from being "compelled in any criminal case to be a witness against himself" under the Fifth Amendment, or (4) the right of any person "to have the assistance of counsel for his defense" in any criminal case under the Sixth Amendment because, in each event, such person was "an unlawful user of or addicted to a controlled substance," then surely this court would use the test of strict scrutiny to determine the validity of that statutory restriction.

The precise question raised by Herrera's case is whether § 922(g)(3) is a reasonable and narrowly tailored restriction, which accurately defines those categories of individuals who should be deprived of their Second Amendment right to keep and bear arms. I can certainly agree that the definition of "addict" set forth in 21 U.S.C. § 802(1) passes the test of *Emerson* as a reasonable restriction on Second Amendment rights. However, in my judgment the words "unlawful user" completely fail to pass *Emerson*'s requirement of strict scrutiny because (1) there is no statutory definition of such words; (2) there is no common and ordinary meaning to such words; (3) there is nothing in the legislative history which would indicate what Congress had in mind by using such words; and, (4) there is nothing from which a court or jury can determine: (i) what quantities of (ii) what controlled

15

substances, in (iii) what time frame on (iv) what occasions, and with (v) what side affects are necessary to constitute "an unlawful user."

Given that there are more than 150 substances in the list of controlled substances in the Controlled Substances Act ("CSA") and that each of these substances has widely varying and different effects on an individual, it would seem elementary to me that Congress must specify the particular substances whose use may cause particular damages and injuries to an individual sufficient to deprive that individual of his Constitutional Rights under the Second Amendment.    Likewise, to have a narrowly tailored restriction on Second Amendment rights, Congress must specify the frequency of use of a controlled substance and the time period during which such a use will be deemed to have a continuing effect on an individual. Otherwise, the term "user" is so open-ended that the ordinary citizen cannot know when his conduct in using a controlled substance may result in forfeiture of his rights under the Second Amendment. The government recognizes these inadequacies when it concedes in its en banc brief that in order for a defendant to be an "unlawful user," his "drug use would have to be with regularity and over an extended period of time;" and further stipulated at en banc oral argument "we certainly wouldn't charge

16

one time use, it would have to be over a period of time." But, under our constitutional concepts of separation of powers, only Congress can define what constitutes "regular use" and what constitutes "an extended period of time"; and neither the prosecutor nor the jury should be permitted to determine those matters on an ad hoc case by case basis.

Now, some final comments about the statutory interpretation task which we face in this case. The exact text of the statute designated as 18 U.S.C. § 922(g)(3) reads as follows:

> (g)  It shall be unlawful for any person--
>     . . . .
>     (3)  who is an unlawful user of or
>     addicted to any controlled substance
>     (as defined in section 102 of the
>     Controlled Substances Act (21 U.S.C.
>     802));
>            . . . .
>
> to ship or transport in interstate or foreign
> commerce, or possess in or affecting commerce,
> any firearm or ammunition;

The cross-references to § 102 of the CSA contain definitions of the term "addict" and the term "controlled substance," but nowhere in § 102 of CSA is there any definition of the term "unlawful user." Likewise, there is no definition of the words "unlawful user" in 18 U.S.C. § 921 which contains all of the definitions relating to the various Sections in chapter 44 dealing with "Firearms;" but, § 921

17

does contain definitions of many of the other terms used in other paragraphs of subsection (g) of § 922.

One of the first interpretative decisions which must be made in understanding § 922(g)(3) is whether the conjunction "or" as it exists between the terms "unlawful user of" and "addicted to" is to be read disjunctively, indicating entirely separate meanings, or is to be read synonymously indicating words having very similar meanings.

Webster's defines the word "or," in relevant part as, "used as a function word to indicate (1) an alternative between different or unlike things, states or actions . . . (3) the synonymous, equivalent, or substitutive character of two words or phrases." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1585 (1971).  Similarly, Black's defines the word "or" as "[a] disjunctive particle used to express an alternative or to give a choice of one among two or more things.  It is also used to clarify what has already been said, and in such cases, means 'in other words,' 'to-wit,' or 'that is to say.'" BLACK'S LAW DICTIONARY 987 (5th ed. 1979).  So it would appear that the word "or" can be either a disjunctive conjunction or a conjunction indicating the use of synonymous term.** Though it may

---

** Webster's defines synonymous as "having the character of a synonym: alike or nearly alike in meaning: capable of being substituted for another word or expression in a statement without essentially changing the statements meaning."  Note that this allows for "nearly alike in meaning" which, is exactly what the

18

be argued that the disjunctive is intuitively the first choice, this is not always so. The Supreme Court has adopted both uses of the word "or" depending on the circumstances and surrounding text. *Compare FCC v. Pacifica Foundation*, 438 U.S. 726, 739-40 (1978) (adopting disjunctive use of the word), *and Flora v. United States*, 362 U.S. 145, 149 (1960) (same), *with Cleveland v. United States*, 531 U.S. 12, 26 (2000) (re-affirming their decision in *McNally v. United States*, 483 U.S. 350 (1987)), *and Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 255 (1994) (adopting the synonymous use definition of "or"), *and United States v. Olano*, 507 U.S. 725, 732 (1993) (citing *United States v. Young*, 470 U.S. 1, 15, n.12 (1985) to support reading Fed. R. Crim. P. 52(b)'s "error or defect" language as really creating only one category of "error"), *and McNally*, 483 U.S. at 358-59 (holding that additional language to 18 U.S.C. § 1341 was added to make it "unmistakable that the statute reached false promises and misrepresentations as to the future as well as other frauds involving money or property," and therefore rejected using "or" in the disjunctive). The Supreme Court has not expressly stated why it has chosen not to use the disjunctive, but from the above cases it seems at least two factors are prevalent: 1) if the legislative intent indicates one use over another, *see*

---

panel majority's definition of "unlawful user" in *Herrera* was to "addict."

19

*Young*, 470 U.S. at 15, n.12; *Cleveland*, 531 U.S. at 26 ("[w]e decline to attribute to § 1341 a purpose so encompassing where Congress has not made such a design clear."); and 2) if using the disjunctive would create surplusage in the terms used. *Hawaiian Airlines*, 512 U.S. at 254 ("Thus, in attempting to save the term 'grievances' from superfluity, petitioners would make the phrase after the 'or' mere surplusage.").

Applying these teachings from the Supreme Court to the circumstances before us here in *Herrera*, I conclude that the most reasonable interpretation to give to the statutory language before us is that the word "or" has not been used by Congress in a disjunctive sense, but has been used by Congress synonymously to reflect that the two terms are really just part and parcel of each other.

Since Congress defined the term "addicted to" but did not define the term "unlawful user" in any way, shape or form, I would conclude that what the government must prove beyond a reasonable doubt is facts sufficient to satisfy the statutory definition of "addicted to;" and, since the government has stipulated that it did not prove facts sufficient in this case to support a finding of "addicted to," we should REVERSE and RENDER THE CONVICTION under count 16.

20

For all of the foregoing reasons, I respectfully DISSENT from the decision of the en banc majority.