22

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JAN 2 7 2003

Michael N. Milby
Clerk of Court

MARIO TUNCHEZ,                    )
                                  )
          Applicant               )
                                  )
vs.                               )   Civil No. B-02-CV-98
                                  )   (CR B-98-158-02)
UNITED STATES OF AMERICA,         )
                                  )
          Respondent              )

APPLICANT'S OBJECTIONS TO
MAGISTRATE JUDGE'S REPORT
& RECOMMENDATION (DKT. #21)

TO THE HONORABLE JUDGE OF SAID COURT:

     COMES NOW the Applicant, Mario Tunchez, represented by

counsel, and hereby files substantive objections to the

Magistrate Judge's Report and Recommendation (Docket Doc. No.

21; Jan. 13, 2003);[1] and hereby states to this Honorable Court

as follows:

I.

THE MAGISTRATE JUDGE'S AMENDED REPORT AND
RECOMMENDATION (DKT #21) VIOLATES ARTICLE III.

A.

     The applicant relies both on *United States v. Johnston*,

258 F.3d 361 (5th Cir. 2001) and on *Northern Pipeline v.*

_____

[1]  While the record shows that the Magistrate's R & R (Dkt #21) was
entered on January 13, 2003, the date on the postal meter of said
envelope containing said R & R (Dkt #21) is January 14, 2003. Adding
three days to the time permitted pursuant to Fed. R. Civ. P. 6(e)
results in the deadline of January 27, 2003, for the timely filing of
objections or a motion for leave to extend the time therefor. A true
and accurate photocopy of the envelope is attached hereto and
incorporated herein as Exhibit 1.

*Marathon Pipe Line*, 458 U.S. 50 (1982).  *Johnston* holds by a two to one majority that even the consensual delegation to a magistrate judge of § 2255 motions is unconstitutional.  Its rationale, roughly, is that no Article I judge should have the authority to set aside the judgment entered by an Article III judge.

Admittedly, the Honorable Magistrate Judge Felix Recio, Jr., is preeminently qualified as an individual to review such pleading; however, it is respectfully submitted on the authority of *Johnston* that acting in his official capacity as an Article I Magistrate Judge, he ought not to exercise any judicial muscle in this habeas exercise in which only Article III judges are in constitutional condition to contend. *Johnston* is applicable to the facts of this matter, for if the consensual delegation of § 2255 motions is unconstitutional, likewise the consideration of the Application for COA by a magistrate judge is unconstitutional.  *See Johnston, supra.*

### B.

*Northern Pipeline v. Marathon Pipe Line*, 458 U.S. 50 (1982) also suggests that the Magistrate's Report & Recommendation (Dkt. #21) violates Article III.  *Northern Pipeline* requires no exhaustive explanation, for it is a landmark case.  It holding is that Article III bars Congress from establishing legislative courts to exercise jurisdiction over all matters arising under the bankruptcy laws under its Art. I powers.  The reasoning of *Northern Pipeline* was that

there is no doubt that bankruptcy judges created by the former Bankruptcy Act are not Art. III judges. The Court reasoned that the judicial power of the United States must be exercised by judges who have the attributes of life tenure and protection against salary diminution specified by Art. III. It noted that these attributes were incorporated into the Constitution to ensure the independence of the Judiciary from the control of the Executive and Legislative Branches. The Court in *Northern Pipeline* therefore concluded that 28 U.S.C. § 1471's broad grant of jurisdiction to bankruptcy judges violated Art. III.

As applied to the Magistrate's Report & Recommendation (Dkt. #221) *Northern Pipeline* urges the conclusion that only an Article III judge clothed with the presidential appointment of life-time tenure has the authority to consider an Application for Certificate of Appealability ("COA").

## II.

**THE ISSUANCE OF THE REPORT & RECOMMENDATION (DKT. #21) BY THE HONORABLE MAGISTRATE JUDGE VIOLATES THE PLAIN STATUTORY LANGUAGE OF 28 U.S.C. § 2253.**

The magistrate judge has no authority to issue any report and recommendation. *See* 28 U.S.C. § 2253. Such procedure violates the express statutory language of 28 U.S.C. § 2253. Specifically, the Congressional scheme of appellate review for federal prisoners whose § 2255 motions have been denied does not either envision or require review by a magistrate judge. Appeal from the denial of a COA is governed by 28 U.S.C. § 2253, subject to the U.S.

Constitution.[2]  Therefore, it appears that any order referring an application for any COA to any magistrate judge would violate the language of 28 U.S.C. § 2253.

In sum, the plain language authorizes only a circuit justice or judge to review an application for COA.  *See* 28 U.S.C. § 2253(c)(1).  Neither review, report nor recommendation by a magistrate is anywhere authorized.  *Id.* Thus, petitioner suggests that the Report & Recommendation (Dkt. #21) is void.  *See* 28 U.S.C. § 2253(c)(1); *United States v. Johnston*, 258 F.3d 361 (5th Cir. 2001); *Northern Pipeline v. Marathon Pipe Line*, 458 U.S. 50 (1982).

### III.

**EXPRESSLY SUBJECT TO PRESERVING HIS CONSTITUTIONAL AND STATUTORY CHALLENGE BOTH TO THE AUTHORITY OF THE MAGISTRATE JUDGE TO ISSUE HIS REPORT & RECOMMENDATION AND TO THE DISTRICT COURT IN MAKING SUCH REFERRAL, PETITIONER INTERPOSES NO OBJECTIONS TO CERTAIN PORTIONS OF THE REPORT & RECOMMENDATION (DKT. #21)**

### A.

With reference to the Report & Recommendation (Dkt. #21), the petitioner has no objection to the language appearing in the section called "Background."  Such section runs from page two and ends on the top of page four.  *See* Report & Recommendation (Dkt. #21), pp. 2-4.

---

[2]  Note that in setting forth this statutory argument the applicant is expressly hereby reserving and reasserting his novel but valid challenge --- a question of first impression for this or any other District Court --- to § 2253's requirement of a COA for a federal prisoner on the two-pronged separation of powers challenge as identified in his Amended Application for COA (Docket Doc. No. 16; filed November 29, 2002).

B.

With reference to the Report & Recommendation (Dkt. #21), the petitioner has no objection to the language appearing in the section called "Analysis" up to but excluding to the text following footnote two (2). *See* Report & Recommendation (Dkt. #21), p. 4. In other words, the first two sentences are correct, but then the Magistrate Judge applies procedure and cites law applicable to a *state* prisoner's § 2254 motion. Tunchez's matter presents a case or controversy and has filed pursuant to 28 U.S.C. § 2255, for he is under federal custody.

IV.

**EXPRESSLY SUBJECT TO PRESERVING HIS CONSTITUTIONAL AND STATUTORY CHALLENGE BOTH TO THE AUTHORITY OF THE MAGISTRATE JUDGE TO ISSUE HIS REPORT & RECOMMENDATION AND TO THE DISTRICT COURT IN MAKING SUCH REFERRAL, PETITIONER OBJECTS TO THE FOLLOWING PORTIONS OF THE REPORT & RECOMMENDATION (DKT. #21)**

A.

Reserving his constitutional and statutory challenges to both the referral on the part of the District Court to the Magistrate Judge and to the issuance by the latter of the Report & Recommendation (Dkt. #21), Petitioner objects as follows: the R & R (Dkt. #21) erroneously concludes that "[p]etitioner Tunchez makes no valid claims that detail a denial of a constitutional right." Magistrate's Report & Recommendation,(Dkt. #21). The petitioner challenges this conclusion as erroneous, for the heart of Tunchez's claim was that he was tried by a jury biased by both trial dynamics

coupled with the erroneous jury instruction.    Tunchez set
forth the following claims -- in support of his request that
a one-page letter be sent to the petit trial jurors asking
whether extraneous information was presented --- in his
Motion for § 2255 Relief, which is quoted as follows:

### GROUNDS FOR RELIEF

15.    The petitioner's grounds for relief as
articulated herein are interwoven and interrelated
to the sole issue consistently raised on direct
appeal and in the Petition for Writ of Certiorari
in this matter, namely, the violation of his Due
Process rights for the following reason: the same
purportedly unbiased jury panel that was to try the
defendant   witnessed   without   contemporaneous
instruction the change in plea of the codefendant,
thus undermining the credibility of the validity of
the petitioner's plea of not guilty and thereby
lowering the burden of proof for the government.

16.    Petitioner asserts that on the facts of
this case as set forth in the trial transcript, his
conviction occurred because of this lowered burden
of proof.    Petitioner merely requests a new trial
before an unbiased jury.

17.    The aggravating circumstances of the unique
facts of this case are as follows: (1) the
appearance of both petitioner and codefendant at
jury selection having pleaded not guilty, (2) the
same   jury's   first   finding   out   about   the
codefendant's guilty plea during the government's
opening   statement   (3)   without   any   cautionary
instruction at any time during the trial and
particularly   not   contemporaneously.    It   is
respectfully suggested that the foregoing affected
"[t]he entire conduct of the trial from beginning
to end" and therefore deprived the defendant of
"basic protections" without which "a criminal trial
cannot reliably serve its function as a vehicle for
determining   guilt   or   innocence."    *Arizona   v.
Fulminante*, 499 U.S. 279, 310 (1991).    This error
was fundamental because it undercut the jury's
presumption of the petitioner's innocence, thereby
lowering the standard of proof necessary for the
government to convict. *Cool v. United States*, 409
U.S. 100, 105 (1972).

18.    Because   of   the   structure   of   jury
selection and trial in this matter, when the jury
found out without cautionary instruction at the
beginning of the trial during the government's
opening that the petitioner's codefendant, who

previously had stood shoulder to shoulder with the petitioner in asserting his innocence, had changed his plea to guilty and was going to testify as an insider (in the words of the government's opening), they were halfway down the road to conviction. In other words, the government's burden of proof was effectively lowered. *See Cool, supra.*

19. Federal appellate courts "have long recognized that admitting a co-defendant's guilty plea can jeopardize the fundamental fairness of a criminal trial because of the likelihood that the jury may impute a co-defendant's guilt to the defendant." *Virgin Islands v. Mujahid*, 990 F.2d 111, 116 (3rd Cir. 1993) (citation omitted). On the facts of this case as presented in the voir dire and trial transcripts, Ex's 7 & 2, the jury witnessed the codefendant's change of plea without any instruction until the very end of the trial; that is they were biased from the beginning of the trial.

20. Bias in the minds of the jurors may be implied given the unusual and aggravating circumstances of this case. *See Smith v. Phillips*, 455 U.S. 209, 225 (U.S. 1982) ("Because there may be circumstances in which a postconviction hearing will not be adequate to remedy a charge of juror bias, it is important for the Court to retain the doctrine of implied bias to preserve Sixth Amendment rights.").

21. The Supreme Court recognizes that a defendant in a criminal trial has certain fundamental rights, the deprivation of which mandates reversal even absent a showing of prejudice. *E.g.*, *Arizona v. Fulminante*, 499 U.S. 279 (1991). As in *Fulminante*, this is one such case.

22. The right to trial by jury necessarily guarantees to the criminally accused a fair trial by a panel of impartial, "indifferent" jurors. *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). "[A] juror must be as indifferent as he stands unsworne." *Id.* (quoting Lord Coke). As this Court writes in *Reynolds v. United States*, "The theory of the law is that a juror who has formed an opinion cannot be impartial." *Reynolds*, 98 U.S. 145, 155 (1879).

23. In this case can it be doubted that any juror failed to form some opinion --- failed to register the import of such information --- as to the petitioner's guilt when they were informed without cautionary instruction that petitioner's codefendant (whom they had seen present himself as innocent during jury selection) had pleaded guilty, would testify, and whose testimony, in the

> government's words, "provides us with some valuable
> insight in your understanding the evidence in this
> case, because <u>normally we don't get the inside
> stories</u>"? Ex. 2, p. 32 (emphasis supplied).
>
> 24. Given that the standard of proof in a
> criminal trial, "beyond a reasonable doubt,"
> communicates the degree of confidence the
> factfinder is expected to have in the correctness
> of his conclusion, can it be doubted that this
> jury's confidence in the guilt of the petitioner
> was boosted by the mechanics of petitioner's trial
> in the way that they were informed of the
> codefendant's guilt? *Cf. In re Winship*, 397 U.S.
> 358, 371 (J. Harlan, concurring).

Tunchez's Motion for § 2255 Relief, ¶¶ 15-24.

Thus, petitioner respectfully suggests that the
conclusion of the Magistrate Judge's Report and
Recommendation (Dkt. #21) that Tunchez failed to make a valid
claim that a constitutional right was denied is erroneous.

### B.   The Report & Recommendation cites to law that governs § 2254 motions.

The Report and Recommendation (Dkt. #21) erroneously
concludes that "Tunchez can not show that the issues are
debatable amongst reasonable jurists." Tunchez notes that
this language originated in *Barefoot v. Estelle*, 463 U.S. 880
(1983) and was adopted in *Slack v. McDaniel*, 529 U.S. 484
(2000). However, those were cases on review from the denial
of a motion for relief from <u>state</u> custody under § 2254. This
language also appears in and the Magistrate Judge cites *Rudd
v. Johnson*, 256 F.3d 317 (5th Cir. 2001) *cert. denied* ___
U.S. ___ (2001); however, *Rudd* is an appeal from the denial
of a § 2254 motion from a <u>state</u> prisoner and thus does not
serve as proper precedent.

C.

The Report and Recommendation concludes that Tunchez "also can not prove that another court would have resolved any of the issues he raised in this § 2255 petition differently." Report & Recommendation (Dkt. #21), p. 6. There was only one remedy sought in the § 2255's motion. That was an order by the Court to the Clerk to issue a single page letter. Tunchez plead as follows in his § 2255 motion:

> 35. To obtain the facts necessary to support his motion Petitioner requests that the jury list be furnished and an order entered authorizing him to contact jurors to ascertain "whether extraneous prejudicial information was brought to the jury's attention" per Fed. R. Evid. 606(b). A proposed order accompanies this motion at Exhibit 8. Attached to the proposed order is a juror questionnaire of one page to be propounded in the petit jurors in this matter.

Tunchez's §2255 Motion, ¶ 35.

This straightforward request for factual discovery was denied. Although petitioner respectfully suggests that since he is in federal custody, that the requirement for a COA as applied to him is unconstitutional, as detailed in other pleadings, he seeks to appeal the Court's denial of his § 2255 request for factual discovery. Since the facts of the case are so novel, and do not arise out of a state conviction, there is little doubt that it would be difficult to find precedent for Tunchez's claim. However, the fundamental constitutional rights at stake are now nested one within the other: the first is petitioner's right to an unbiased jury; the second is his right as one held under federal authority to seek an independent collateral review of

his conviction in federal court with plenary appellate rights, undiminished by Congress' unconstitutional limitations of AEDPA. In sum, petitioner objects to the conclusion of the Report & Recommendation (Dkt. #21) that states "[Tunchez] can not prove that another court would have resolved any of the issues he raised in this § 2255 petition differently." Report & Recommendation (Dkt. #21), p. 6.

D.

**The Report and Recommendation erroneously rejects the validity of petitioner's two-pronged challenge to the requirement of a COA by one under federal custody on the grounds of separation of powers.**

1.    Summary of Double-pronged SOP Challenge.

CONGRESS STRIPS THE JUDICIARY OF ITS POWER TO EXERCISE AN ESSENTIAL ATTRIBUTE OF A TRADITIONAL JUDICIAL FUNCTION, NAMELY, PLENARY APPELLATE REVIEW.

a.    **Congress withdraws "judicial cognizance" from the courts in AEDPA.**

The Judiciary Branch has been stripped of power by § 2253's requiring a certificate of appealability ("COA") for a federal prisoner. An essential attribute of the Judicial Branch is the power of plenary appellate review,[3] and "Congress cannot 'withdraw from [Art. III] judicial cognizance <u>any</u> matter which, <u>from its nature</u>, is the subject

---

[3]    *Commodity Fut. Trading Comm'n v. Schor*, 478 U.S. 833, 852 (in reviewing SOP challenges, "[a]mong the factors upon which we have focused are the extent to which the 'essential attributes of judicial power' are reserved to Article III courts." (citation omitted)) (1986). *See also Kaufman v. United States*, 394 U.S. 217, 228 ((1969) (emphasis supplied) (in ruling on a pre-AEDPA § 2255 motion writes "[F]ederal constitutional rights of personal liberty shall not be denied without the fullest opportunity for <u>plenary judicial review."</u> ).

of a suit at the common law, or in equity, or admiralty.'"
*E.g.*, *Northern Pipeline v. Marathon Pipe Line Co.*, 458 U.S.
50, 70, n. 23 (emphasis in original) (quoting *Murray's Lessee
v. Hoboken Land & Improvement Co.*, 18 How. 272, 284 (1856)).
Yet the withdrawal from "judicial cognizance" is precisely
what Congress requires in § 2253(c), for it has made
appellate review conditional. *See* 28 U.S.C. § 2253(c).
Congress has conditioned the exercise of federal appellate
jurisdiction upon the existence of a "certain state of
things." *See Klein*, 80 U.S. (13 Wall.) 128, __ (1871).[4] That
state is the "substantial showing of the deprivation of a
constitutional right." *See* 28 U.S.C. § 2253(c)(2).

b.

The Congressional requirement in AEDPA's § 2253 echoes
the conditional Congressional requirement in the loyalty
statute at issue in *United States v. Klein*, 80 U.S. (13
Wall.) 128 (1871) that was held to violate SOP. The Supreme
Court in *Klein* writes as follows:

> The court has jurisdiction of the cause to a
> given point; but when it ascertains that a certain
> state of things exists, its jurisdiction is to
> cease and it is required to dismiss the cause for
> want of jurisdiction.

> It seems to us that this is not an exercise of
> the acknowledged power of Congress to make
> exceptions and prescribe regulations to the
> appellate power.

*Klein*, 80 U.S. at 146, 20 S.Ct. at 525. Thus, the Court held
that the Congressional statute conditioning plenary appellate

---

[4]    *Klein* was fully briefed in the Applicant's Objections to the
Magistrate's Second Objections (docket Doc. No. 13; filed November 14,
2002), pp. 3-5.

review violated SOP.  Likewise, AEDPA violates SOP by setting conditions for the court to exercise an essential function solely attributable to the judicial branch, namely, plenary appellate review. *See Klein, supra.*[5]

### 2. *Mistretta* and "peculiarly shared responsibility."

*Mistretta v. U.S.,* 488 U.S. 361 (1989) also confirms that plenary appellate review of a case or controversy arising under Article III, § 1 is required by the SOP doctrine. *See Mistretta, infra.* Mistretta considered constitutional challenges against the Sentencing Guidelines. The primary constitutional challenge was that Congress had delegated excessive authority to the Sentencing Commission. The petitioners also raised a challenge based on SOP. *Mistretta's* reason for rejecting the SOP challenge to the Sentencing Commission supports the applicant's SOP challenge in this case.  Writing for the Court, Justice Blackmun (with

---

[5]    The echoes of counsel's contentions, summarized in *Klein* on this constitutional question, still sound true today; to-wit:

> This act is unconstitutional, because it is a legislative usurpation of the separate powers and functions of the judiciary.

> That judicial power which should be exercised by the court, under and according to the ever changing and variable will of popular assemblies, would, of all things, but the most uncertain, unstable and unjust in it judgments and decrees.  Instead of being, as the framers of this government intended it should be, an independent and co-ordinate branch of the government, the judiciary would then shrink into the mere instrument of Congress, to perform such subordinate duties as should be directed and imposed by the superior dominant power of the legislature.  And this was evidently the view of the author and framer of this law. for it not only undertakes to circumscribe and restrict the jurisdiction of this court, where the Constitution has conferred it without limitation . . . .`

only J. Scalia dissenting) identified the reason for rejecting the SOP challenge: "As we described at the outset, the sentencing function long has been a *peculiarly shared responsibility among the Branches* of Government and has never been thought of as the exclusive constitutional province of any one Branch." *Mistretta*, 488 U.S. at 391 (citation omitted) (emphasis added).

Unlike sentencing (at issue in *Mistretta*), however, only the Judiciary Branch has the power of appellate review.[6] *Ex parte Yerger*, 8 Wall (75 U.S.) 85, 95-100 (1869). Rather than plenary review, Congress has imposed a condition on the exercise of appellate review in AEDPA. *See* 28 U.S.C. § 2253(c)(2). However, the Supreme Court has suggested that even when Congress assigns matters to administrative agencies, or to legislative courts, it has generally provided --- and may be required to provide for --- plenary Art. III judicial review. *See Atlas Roofing Co. v. Occupational Safety and Health Review Comm'n*, 430 U.S., ___ , at 455, n. 13. It is therefore respectfully suggested that when Congress acts under the authority of Art. III, § 1, the Constitution implicitly assigns to the Judiciary Branch "the judicial Power" absolutely and without reservation --- "shall be vested" --- to determine a case or controversy, and

---

*Klein*, 80 U.S. at ___ , 20 S.Ct. at 521 (emphasis added).

[6] *See U.S. Steel Co. v. Citizens*, 523 U.S. 83, 103 (1998) ("Article III, § 2, of the Constitution extends the 'judicial Power' of the United States only to 'Cases' and 'Controversies.' We have always taken this to mean cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process." (citation omitted)); *see also Hohn v. United States*, 524 U.S. 236 (1998); *Ex parte Yerger*, 75 U.S. (8 Wall.) 85, 102-3.

Congress may therefore not constitutionally circumscribe plenary appellate review, because such is an essential attribute of judicial power. *See Northern Pipeline, supra; Mistretta, supra; Atlas Roofing, supra; Klein, supra.*

3.

Congress' unconstitutional incursion into the corpus of the judiciary's capacity to review the denial of a federal prisoner's § 2255 motion is also shown by the fact that the government is not required to apply for a COA. *See* Fed. R. App. P. 22(b)(3).[7] Applying the reasoning of the U.S. Supreme Court in *Klein,* Congress has provided a rule of decision that violates the SOP doctrine. *See Klein,* 20 S.Ct. at ___ . Just as the Judiciary Branch fulfilled its duty to the Founding Father's vision of independent and co-equal branches in *Klein* by identifying a Reconstructionist Congress' transgressions in the statute at issue as violative of SOP; likewise, the Congressional violation in AEDPA, having been identified, ought to be seen for what is it, namely, an unconstitutional circumscription of the Judiciary Branch's plenary appellate review because such is an essential attribute of judicial power. *See Northern Pipeline, supra; Mistretta, supra; Klein, supra.*

---

[7] Fed. R. App. P. 22 was amended to conform with Title I of AEDPA. In its entirety it reads as follows: "A certificate of appealability is not required when a state or its representative or the United States or its representatives appeals." *See* Pub. L. 104-132, 110 Stat. 1217 (1996).

4.

The Founding Fathers envisioned three co-equal and independent branches to act within their spheres of influence. *See* Federalist No. 81.[8]  In the universe of their constitutional imaginations only Congress has power to launch judicial satellites. *See* U.S. Const., Art. III, § 1.  Having been launched by Congress, the Constitution requires that the courts be vested in their orbit of "the judicial Power".  The orbit encompasses "cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process." *U.S. Steel Co. v. Citizens*, 523 U.S. 83, 103 (1998).  The momentum of the orbit of the essential attribute of the judicial process is maintained by the centrifugal finding of fact by the district court and the centripital conclusions of law by the reviewing court.  In other words, by setting in motion a court inferior to the Supreme Court under Article III, § 1 and thereby creating a judicial orbit, Congress does not have the constitutional capability thereafter to block or conditionally abort the continued path of orbit. *See* U.S. Const., Art. III, § 1.[9]  In sum, § 2253(c) of AEDPA inexorably alters the Founding Fathers' creation of

---

[8]   Section 16 of the Declaration of the Rights of Man (comprised *in toto* of seventeen articles), approved by the National Assembly of France on August 26, 1789, declares in its entirety as follows: "A society in which the observance of the law is not assured nor the separation of powers defined, has no constitution at all."

[9]   The first sentence of the U.S. Const., Article III, § 1 reads as follows:

> The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior courts as the Congress may from time to time ordain and establish.

the American political universe: a universe in which judicial cognizance of cases and controversies by the Judiciary Branch will remain in coequal, constitutional orbit, and the legitimacy of the government's restraint on an individual's liberty through plenary appellate review may always be explored.

E.

**IN AEDPA'S § 2253 CONGRESS HAS SHIFTED RESPONSIBILITY ONTO THE COURTS' SHOULDERS TO MAKE AN AD HOC, CASE BY CASE, DETERMINATION *VEL NON* (AS TO WHETHER A SUBSTANTIAL SHOWING OF THE VIOLATION OF A CONSTITUTIONAL RIGHT HAS BEEN SHOWN) AS A NECESSARY PREREQUISITE TO THE EXERCISE OF ITS JURISDICTION AND SUCH SHIFTING VIOLATES ARTICLE III, § 1.**

1.  <u>§ 2253 asks the judiciary to make ad hoc, case by case, determinations as to the exercise of their appellate jurisdiction.</u>

Title I of AEDPA violates SOP by shifting Congressional responsibility to the judiciary the responsibility for determining whether or not it will continue its judicial orbit or abort its constitutional mission; i.e., not exercise its plenary appellate jurisdiction. *See* 28 U.S.C. § 2253(c). Specifically, this shift is accomplished by AEDPA's assigning to the court, itself, responsibility to exercise appellate jurisdiction *vel non* on an *ad hoc,* case by case, basis with respect to the appeal of the denial of a federal prisoner's § 2255 motion, depending on a substantial showing of the violation of a constitutional right. *See* 28 U.S.C. § 2253(c)(1)(B) & 2253(c)(2). This exercise of appellate authority that is wholly dependent upon a determination by

the court, itself, is a subtle but sure surpassing of the limits separating legislative from judicial power. *See United States v. Klein*, 80 U.S. (13 Wall.) 128, 147 (1871). The analysis of the Court in *Klein* is again relevant, as follows:

> Congress has already provided that the Supreme Court shall have jurisdiction of the judgments of the court of claims on appeal. Can it prescribe a rule in conformity with which the court must deny to itself the jurisdiction thus conferred, because and only because its decision, in accordance with settle law, must be adverse to the government and favorable to the suitor? This question seems to us to answer itself.

*Klein*, 80 U.S. at 147, 20 S.Ct. at 526.

Thus, the precedent of *Klein* clearly supports the conclusion that Congress violated SOP by assigning in Title I of AEDPA power to exercise appellate jurisdiction *vel non* with respect to the appellate review of the denial of a federal prisoner's § 2255 motion, depending on a substantial showing of the violation of a constitutional right. *See Klein, infra.*

2.

### Basic jurisdiction (to question jurisdiction) versus "jurisdiction."

Language from both *Hohn v. United States*, 524 U.S. 236 (1998) and *Young v. United States*, 124 F.3d 794 (7th Cir. 1997) confirms that the issuance of a COA is a necessary prerequisite jurisdictional requirement. These cases combine to counter the anticipated argument that in AEDPA Congress

has not stripped the Judiciary Branch of jurisdiction but merely made its exercise conditional.[10]

The conditional jurisdiction to exercise appellate review under 28 U.S.C. § 2253(c)is different than the basic jurisdiction employed by a federal court to question whether it has jurisdiction. This latter, basic type of jurisdiction may be raised *sua sponte* by the court, at any time, even if not raised by the parties, themselves. This is hornbook federal jurisdiction law. The suggestion that AEDPA's § 28 U.S.C. § 2253(c)(1)(B) & 2253(c)(2) is a mere condition on the exercise of plenary appellate jurisdiction that Congress has granted freely and fully without violating SOP is contradicted by both *Hohn* and dictum in *Young*.

a.   *Hohn v. United States.*

*Hohn* is an interesting five to four decision in which Justice Souter barely tips the scales of decision. He concurs in a single paragraph. Interestingly, he confirms the concept --- a lá *Bivens v. Six Unknown Named Agents,* 403 U.S. 388 (1971) (implying a private right of action that arise directly under the Constitution) --- that the U.S. Supreme Court enjoys common law certiorari power to review the denial by the federal court of appeals of an application for COA. *See Hohn,* 524 U.S. at 254. However, he ultimately casts his vote with the majority that overrules *House v.*

---

[10]   While this articulation may be a semantic distinction without differentiation in substance, this anticipated counter argument is more fully discussed in exploring the similarities between the contractual concept of "conditions precedent" and the anticipated counter argument. See the discussion of *conditions* precedent set forth, *infra.*

*Mayo*, 324 U.S. 42 (1945) (a case arising from a <u>state</u> prisoner's habeas).

The issue is *Hohn* is whether the Supreme Court has jurisdiction to review the decisions of the federal courts of appeals' denials of applications for certificates of appealability arising under § 2255. The Court held that it did have such jurisdiction.

*Hohn* is governed by AEDPA and arose from the denial by the 8th Circuit Court of Appeals of Hohn's § 2255 motion. 524 U.S. at 240-1. The majority of the Supreme Court examined the plain language of 28 U.S.C. § 1254 that, in the Court's words, "is the statute most often invoked for jurisdiction in this Court." 524 U.S. at 242. The Court writes as follows:

> There can be little doubt that Hohn's application for a certificate of appealability constitutes a case under § 1254(1). As we have noted, '[t]he words "case" and "cause" are constantly used as synonyms in statutes . . . , each meaning a proceeding in court, a suit, or action." [citation omitted] The dispute over Hohn's entitlement to a certificate falls within this definition. It is a proceeding seeking relief for an immediate and redressable injury, *i.e.*, wrongful detention in violation of the Constitution. There is adversity as well as the other requisite qualities of a 'case' as the term is used in both Article III of the Constitution and the statute here under consideration. This is significant, we think, for cases are addressed in the ordinary court of the judicial process, and, as a general rule, when the district court has denied relief and applicable requirements of finality have been satisfied, the next step is review in the court of appeals [assuming the issuance of a COA].

*Hohn*, 524 U.S. at 242. Thus, *Hohn* is precedent for the proposition that a COA is a necessary <u>jurisdictional</u>

_prerequisite_ for the exercise of the jurisdiction by the Judiciary. _Id._

b. _Young v. United States._

Like the Supreme Court's analysis in _Klein_, Judge Easterbrook confirms that "a proper certificate [of appealability] is a _jurisdictional requirement_" for reviewing the denial of a § 2255 motion. _Young_, 124 F.3d 794, 799 (7th Cir. 1997) (emphasis added).

3. No federalism rationale applies to § 2255 appeals.[11]

Pre-1996 law did not require a COA by federal prisoners. _See_ 28 U.S.C. § 2253(c) (West 1995); _United States v. Hunter_, 101 F.3d 1565 (11th Cir. 1996) (_en banc_). As the Eleventh Circuit Court of Appeals explained, "[U]successful § 2255 movants were not required by preexisting law [the pre-AEDPA statute] to obtain a certificate as a prerequisite to an appeal. They could appeal without getting a judge to certify anything about the possible merit of their issues." 101 F.3d at 1571. The _en banc_ court continued: "Sections 102 and 103 of the AEDPA changed that, subjecting § 2255 movants to pre-appeal certification requirements (the same ones that apply to § 2254 applicants)." _Hunter_, 101 F.3d 1565, 1571 (11th Cir. 1996) (_en banc_). AEDPA's undisputed purpose is to promote "the principles of comity, finality and federalism." _Williams v. Taylor_, 529 U. S. 420, 436 (2000). In reviewing

---

[11] Federalism as applied to the review of state convictions is affirmed by two cases issued early this 2003 Term by the U.S. Supreme Court. _See, e.g., Woodford v. Visciotti_, 537 U.S. ___ , No. 02-137 (Nov. 4, 2002) (_per curiam_) (reversing the Ninth Circuit's affirmance of a grant of habeas relief on the basis that the federal court's decision "exceeds the limits imposed on federal habeas review by 28 U.S.C. § 2254(d)."

a federal conviction, no principles articulated in *Williams*
apply except finality.    And with respect to finality the
Supreme Court writes, "[C]onventional notions of finality in
criminal litigation cannot be permitted to defeat the
manifest federal policy that federal constitutional rights of
personal liberty shall not be denied without the fullest
opportunity for <u>plenary [appellate] judicial review</u>."
*Kaufman v. United States*, 394 U.S. 217, 228 ((1969) (emphasis
supplied) (in ruling on § 2255 motion).

F.

> **AEDPA'S REQUIREMENT THAT THE EXERCISE OF FEDERAL
> APPELLATE JURISDICTION BE CONDITIONED ON THE
> SUBSTANTIAL SHOWING OF THE VIOLATION OF A <u>FEDERAL</u>
> PRISONER'S CONSTITUTIONAL RIGHTS VIOLATES THE
> SEPARATION OF POWERS ("SOP") DOCTRINE.**

Only Congress has power to establish the scope of the
exercise of federal appellate jurisdiction.    *See* U.S. Const.,
Art. III, §§ 1[12]    Title I of AEDPA[13], however, violates SOP by
shifting to the federal courts the power to determine whether
or not they will exercise their jurisdiction.    Specifically,
this shift is accomplished by AEDPA's assigning to the courts

---

[12]    The first sentence of the U.S. Const., Article III, § 1 reads as
follows:

> The judicial Power of the United States, shall be
> vested in one supreme Court, and in such inferior courts as
> the Congress may from time to time ordain and establish.

[13]    The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),
Pub. L. 104-132, 110 Stat. 1217; Title I is codified at 28 U.S.C. §§
2241-2155.    AEDPA's undisputed purpose is to promote "the principles of
comity, finality and federalism." *Williams v. Taylor*, 529 U. S. 420, 436
(2000).    Such principles save finality are only of concern as a matter
of federalism in reviewing a state conviction, which are not at issue
here.

power to exercise appellate jurisdiction *vel non* with respect to the denial of a federal prisoner's § 2255 motion, depending on a substantial showing of the violation of a constitutional right.   *See* 28 U.S.C. § 2253(c)(1)(B) & 2253(c)(2).  This conditional exercise of appellate authority that is wholly dependent upon a determination by the courts, themselves, is a subtle but sure surpassing of the limits separating legislative from judicial power.   *See United States v. Klein*, 80 U.S. (13 Wall.) 128, 147 (1871).

1.

*Klein, supra*, is a rare gem of a case.  It arose on the claim for the proceeds from 664 bales of cotton.  The bales had been seized and sold by U.S. Treasury agents.  The amount at stake was the then-princely sum of little more than one-eighth of one million dollars ($125,300.00).  After the owner of the bales died, the administrator of his estate, Mr. Klein, pursued the claim against the United States.  He brought suit in the court of claims.  The court of claims rendered judgment for Klein.

In supplemental findings made after the judgment it was shown by the government that during the Civil War the owner of the bales had signed as surety two official bonds of military officers in the Confederate Army (one bond for a brigade quartermaster and the other bond for an assistant commissary).  Thereafter, the owner of the bales had taken an amnesty oath and had been pardoned by President Lincoln.  The pardon was "dated December 8, 1863, [which] relieved him from

any charge of disloyalty on account of his having become security as aforesaid." *Klein*, 80 U.S. at ___ , 20 S.Ct. at 520.

The government made a motion to dismiss Klein's claim for the proceeds of the cotton bales. The government based its motion on the applicable statute that set forth two substantive rules: first, it made a pardon prima facie evidence that a person had participated in the Rebellion (assisted the Confederacy); secondly, it divested the courts (either the court of claims or the appellate court, in this case the U.S. Supreme Court) of jurisdiction. *Klein*, 80 U.S. at 145-6, 20 S.Ct. at 525. Among other arguments Klein suggested that the applicable statute violated SOP.

The Supreme Court agreed with Klein that the statute violated SOP in the following passage:

> The court has jurisdiction of the cause to a given point; but when it ascertains that a certain state of things exists, its jurisdiction is to cease and it is required to dismiss the cause for want of jurisdiction.
>
> It seems to us that this is not an exercise of the acknowledged power of Congress to make exceptions and prescribe regulations to the appellate power.

*Klein*, 80 U.S. at 146, 20 S.Ct. at 525.

2.

Further supporting the conclusion that Title I of AEDPA as applied to federal prisoners violates SOP is found in its exempting the government from applying for a COA. *See* 28 U.S.C. § 2253(c)(2) (providing that a COA is only required by

a prisoner and not by the government).[14]  The analysis of the Court in *Klein* is again relevant, as follows:

> Congress has already provided that the Supreme Court shall have jurisdiction of the judgments of the court of claims on appeal.  Can it prescribe a rule in conformity with which the court must deny to itself the jurisdiction thus conferred, because and only because its decision, in accordance with settle law, must be adverse to the government and favorable to the suitor?  This question seems to us to answer itself.

*Klein*, 80 U.S. at 147, 20 S.Ct. at 526.

Thus, the precedent of *Klein* clearly supports the conclusion that Congress violated SOP by assigning in Title I of AEDPA power to exercise appellate jurisdiction *vel non* with respect to the denial of a federal prisoner's § 2255 motion, depending on a substantial showing of the violation of a constitutional right.  *See Klein, infra.*

3.

Several facts are clear: first, before 1996 the pre-AEDPA statute required no certificate of probable cause for federal prisoners.  One of the reasons is found in a series of Supreme Court decisions that protect the right of plenary appellate review against SOP violation.  *E.g., INS v. Chadha,* 462 U.S. 919 (1983) (Congressional veto of deportation violates separation of powers).  Admittedly, where Congress acts within its Article I power, Supreme Court review permits statutory limitations on appellate review.  *E.g., Board v. MCorp Financial, Inc.,* 502 U.S. 32 (1991) (upholding

---

[14]   F. R. App. P. 22(b)(3) was revised to conform with Title I of AEDPA. In its entirety it reads as follows: "A certificate of appealability is not required when a state or its representative or the United States or its representatives appeals."

provision of Congress' Financial Institutions Supervisory Act that bars judicial review pending administrative action). However, where Congress power rests on the "cases and controversies" language of Article III --- its authority for AEDPA --- SOP clearly restrains Congressional shifting of its power to the federal courts to determine whether or not they will exercise their jurisdiction. *See Klein, supra; INS, supra; see also MCorp Financial, Inc.*

Moreover, with an eye open to SOP concerns the Supreme Court prefers to protect plenary appellate review against Congressional intrusion. *E.g. Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986) (preferring to avoid the "serious constitutional question" by interpreting statute's language to permit individuals to challenge a payment regulation's validity even though the statute barred judicial review of individual claims for payment under the regulation). Specifically, for example, in *Oestereich v. Selective Service*, 393 U.S. 233 (1968) the Supreme Court permitted judicial review of a 1-A classification even though the Congress' statute expressly and specifically forbade preinduction judicial review); *accord Breen v. Selective Service*, 396 U.S. 460 (1970).[15]

---

[15]    *See also Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989) (Congress lacks the power to strip parties who are contesting matters of private right of their constitutional right to a jury trial); *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995) (Congress may not exercise the judicial power to revise final judgments); *J. W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 406 (1928) (Congress may not "invest itself or its members with either executive power or judicial power").

In sum, solely with respect to the appeal of the denial of a federal prisoner's § 2255 motion and drawing a distinction for appeals by the government, 28 U.S.C. § 2253(c)(1)(B) and § 2253(c)(2) impermissibly shift Article III Congressional power for establishing appellate jurisdiction to the courts (depending on whether or not the courts, themselves, determine that a substantial showing of the violation of a constitutional right is shown) that, like the statutes at issue in *Klein* and *INS*, violates SOP.

### V.

**EXPRESSLY SUBJECT TO PRESERVING HIS CONSTITUTIONAL AND STATUTORY CHALLENGE BOTH TO THE AUTHORITY OF THE MAGISTRATE JUDGE TO ISSUE HIS REPORT & RECOMMENDATION (Dkt. #21) AND TO THE DISTRICT COURT IN MAKING SUCH REFERRAL, PETITIONER OBJECTS THAT THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (Dkt. #21) ERRONEOUSLY FAILS TO IDENTIFY ANY PARTICULAR ISSUE OF THE FOUR PRESENTED ON WHICH A SUBSTANTIAL SHOWING OF THE VIOLATION OF A CONSTITUTIONAL RIGHT FAILED TO BE MADE AND THEREFORE FALLS SHORT OF COMPLYING WITH THE REQUIREMENTS OF 28 U.S.C. § 2253 THAT SUCH ISSUES BE IDENTIFIED.**

The Magistrate Judge's Report and Recommendation (Docket Doc. No. 21) paints with a broad brush and fails to specify which of the four issues raised in Petitioner's Amended Application (Docket Doc. No. 16) have been ruled upon.

### VI.

In sum, the district court denied the applicant the proper procedural vehicle of discovery and an evidentiary hearing on the facts of this unusual case in which the basic fair trial process was aborted, echoing the types of cases that are serious constitutional violations: *Payne v.*

*Arkansas*, 356 U.S. 560 (1958) (use of coerced confession), *Gideon v. Wainwright*, 372 U.S. 335 (1963) (denial of counsel), and *Tuney v. Ohio*, 273 U.S. 510 (1927) (biased adjudicator).  Applicant therefore objects to the Magistrate Judge's Report and Recommendation (Dkt. #21) for the foregoing reasons.

## VII.   CONCLUSION

WHEREFORE, premises considered, the applicant respectfully requests this Honorable Court reject the Magistrate Judge's Report and Recommendation (Docket Doc. No. 21) and grant the amended application for a certificate of appealability with respect to whether the district court erred with respect to the following six issues:

1.   failing to consider the single-page jury questionnaire attached to the § 2255 petition and incorporated therein as a request for discovery under the applicable rules;

2.   incorrectly applying the law of the case doctrine to foreclose consideration of the motion for post-conviction relief over the applicant's objections;

3.   failing to order an evidentiary hearing on the issue of actual jury bias;

4.   failing to order an evidentiary hearing on the presumption of implied jury bias;

5.   whether AEDPA withdraws judicial cognizance of an essential judicial attribute by stripped the judiciary of power in § 2253's requiring a certificate of appealability ("COA") for a federal prisoner under federal custody; and

6.   whether 28 U.S.C. § 2253(c) of AEDPA violates SOP by shifting the responsibility to the judiciary for determining whether or not the courts will exercise its plenary appellate jurisdiction in violation of Article I.

Respectfully submitted,

*Jon Karl Schmid*

Jon Karl Schmid
Attorney at Law
1201 E. Van Buren
P. O. Box 350
Brownsville, Texas 78522-0350
(956) 542-7441
Attorney for Applicant
Southern Dist. Tx. Bar #21303
Colorado State Bar #015224

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate photocopy of the foregoing Objections to the Magistrate Judge's Report and Recommendation (Docket Doc. No. 21) has been hand-delivered to the following counsel of record for the respondent, addressed as follows:

> Mark Dowd, Esq.
> Assistant U.S. Attorney
> Office of the U.S. Attorney
>   for the Southern District of Texas,
>   Brownsville Division
> Garza-Vela Court House
> 600 E. Harrison St.
> Brownsville, Texas 78521

Dated at Brownsville, Texas this 27th day of January, 2003.

*Jon Karl Schmid*



CLERK
ITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
POST OFFICE BOX 61010
HOUSTON, TEXAS 77208
OFFICIAL BUSINESS



Jon Karl Schmid    1:02-cv-00098 21
Attorney at Law
P O Box 350
Brownwville, TX  78522

- - - - - - - - - - - - - - - - - - - - - -



neopost
$00.830
01/14/2003
Mailed From  77002
00178250
US POSTAGE